213 So.2d 374

**Hattie Robinson SMITH**

v.

**Demarias Stevens BROWN.**

**4 Div. 218.**

Supreme Court of Alabama.

June 13, 1968.

Rehearing Denied Aug. 22, 1968.

W. G. Hardwick and Jere C. Segrest, Dothan, for appellant.

J. Robt. Ramsey, Dothan, for appellee.

KOHN, Justice.

This suit was filed in the circuit court of Houston County, in equity, by Demarias Stevens Brown against Hattie Robinson Smith for the purpose of establishing a boundary line between their property, invoking the jurisdiction of the court under Title 13, § 129 and Title 47, § 3, Code of Alabama, 1940.

Submission for final decree was on the amended complaint, answer of the respondent, and testimony taken before the official court reporter of Houston County, Alabama, on June 26, 1962. Thereafter, on October 14, 1964, the lower court established as the true line that claimed by complainant. Appellant (respondent) appeals from the decree of the circuit court establishing the boundary line.

There are basically two issues for our determination: (1) Whether the decree of the lower court correctly established the true boundary line between the two lots; and (2), has respondent acquired by adverse possession any of the land lying north of said true line. The strip of land which is in dispute measures approximately 15 x 75 feet across the northern side of respondent's lot. A rough map is provided to assist in a proper understanding of the case.

The testimony was taken by deposition and not in open court. We, therefore, must examine and form our own judgment as to its probative force without any presumption in favor of the findings of the lower court. W. T. Smith Lumber Co. v. Cobb, 266 Ala. 146, 94 So.2d 763.

1.

Complainant alleges in her bill that she is the owner of the following described real estate:

"One lot in the 200 block of N. St. Andrews St., on the east side thereof, in the City of Dothan, Alabama, described as follows: Beginning at a point 30 ft. North of the NW corner of the Standard Oil Company's lot on the East side of N. St. Andrews St., and running North along the East boundary of N. St. Andrews St., 175 ft., thence East 300 feet; thence South 180 feet; thence West 75 feet; thence North 4 feet and 8 inches; thence West 75 feet to the Southeast corner of the lot formerly owned by Horace Hall; thence North 15 feet to the Northeast Corner of said Hall lot; thence West 150 feet to the starting point and bounded on the West by N. St. Andrews St.; on the North by the former Pemberton lot; on the East by the Dothan Machine Company lot and on the South by the Robinson lot and the R. H. Ramsey lot."

Complainant further avers that respondent, Hattie Robinson Smith, is the owner of, and is in possession of a house and lot on East Troy Street in Dothan, Alabama, described as follows:

"Commencing at a point 225 feet East of the Southwest corner of the former J. R. McCarty residence lot, now owned by DeMarias Stevens Brown, on the East side of North St. Andrews St., said point of beginning being on the line as it runs between said McCarty lot and the former lot of Alto L. Barnes and running in an easterly direction 75 feet; thence Southward 89 feet; thence Westward a distance of 89 feet to a point 225 feet from the inside of the sidewalk on the East side of North St. Andrews St., and thence Northward from said point to the starting point."

However, the deed by which respondent acquired the lot in question contained the following description:

"Commencing at a point on the north side of Troy Street 225 feet east of the inside edge of the sidewalk on the east side of North St. Andrews Street; and running northward parallel with St. Andrews Street 89 feet to the south side of one lot owned by J. M. Stevens, and formerly known as the J. R. McCarty lot; thence east along the south side of said Stevens lot 75 feet; thence southward 89 feet to a point on the north side of Troy Street 89 feet east of the starting point; thence west along the north side of Troy Street 89 feet to the point of beginning; said measurements being exclusive of sidewalks."

Complainant's bill further avers in Paragraph Five:

"Plaintiff further avers that that part of the description of said lot in paragraph Four which reads: 'said measurements being exclusive of sidewalks' is an error and that as a matter of fact the sidewalk and a part of East Troy Street now occupy a part of said lot and this is causing the defendant to encroach upon the lot of the plaintiff; that plaintiff now owns the lot referred to in the description in paragraph Four as the lot owned by J. M. Stevens, and formerly known as the J. R. McCarty lot and that the defendant's property is bounded on the north by said Stevens or McCarty lot and that the defendant has never owned any part of it."

The issue giving rise to this suit is thus clearly evident. Are the 89 foot east and west boundaries of respondent's property to be measured from the north side of the sidewalk on East Troy Street, or do the 89

foot lines encompass the sidewalk and a part of East Troy Street? A study of the history of respondent's chain of title convinces us that the latter is the correct interpretation.

The lot presently owned by respondent was, for a time prior to 1920, owned by Alto L. Barnes. On February 25, 1920, Barnes conveyed that parcel of property to Mrs. E. J. Robinson by warranty deed. The deed contained the following description of the lot:

"One vacant lot in the City of Dothan described as follows: Commencing at a point 225 feet from the southwest corner of the J. R. McCarty residence lot now owned by Dr. J. M. Stevens, on the east side of North Saint Andrews Street, said point of beginning being on the line as it now runs between said McCarty (Now Stevens lot) lot, and lot of A. L. Barnes and running in an easterly direction seventy-five feet, thence southward 89 feet thence westward a distance of 89 feet to a point 225 feet from the inside of the sidewalk on East side of North St. Andrews St. and thence northward from said point described as being 225 feet from the inside of the sidewalk on East side of N. St. Andrews St. to the starting point."

On August 31, 1925, Mrs. Robinson conveyed the lot to R. E. Robinson by warranty deed with the following description:

"One house and lot in the City of Dothan, Ala., commencing at a point on the north side of Troy Street two hundred twenty five (225) [feet] east of the inside edge of the sidewalk on the east side of North St. Andrews St. and running northward parallel with St. Andrews Street eighty nine (89) feet to the south side of one lot now owned by J. M. Stevens and formerly owned by J. R. McCarty; thence east along the south side of said Stevens lot seventy five (75) feet thence southward eighty-nine (89) feet to a point on the north side of Troy Street eighty-nine (89) feet east of the starting point, thence west along the north side of Troy Street eighty-nine (89) feet to the starting point said measurements being exclusive of the sidewalks, and being the same property conveyed by Alto L. Barnes to Mrs. E. J. Robinson by deed of date Feb. 25th, 1920 and recorded in Book 38 on page 343 of the Probate office of Houston County, Alabama."

This latter description has remained in substantially identical form through several mesne conveyances to the present owner, Hattie Robinson Smith. The source of the dispute in this suit is readily apparent from a comparison of the two foregoing descriptions of the same piece of property with the enclosed plat of the property.

The 1920 deed from Barnes to Mrs. E. J. Robinson described the lot beginning at a point on the southern boundary of the lot presently owned by complainant and measuring in an easterly direction 75 feet, then *southerly 89 feet*, then westerly 89 feet, then northerly 89 feet to the point of beginning. The 1925 deed from Mrs. E. J. Robinson to R. E. Robinson described the same lot beginning at the purported southern boundary of that lot, i.e., the north side of Troy Street excluding the sidewalk, and running *northerly 89 feet*, etc.

Barnes testified that at the time he sold the lot to Mrs. E. J. Robinson in 1920, Troy Street was not as wide as it is now, that it was a dirt street or alleyway at that time, and was approximately 15 feet wide. It appears from this evidence that the lot now owned by respondent was 89 feet deep at the time Barnes sold it to his grantee, but that the subsequent widening of Troy Street and construction of a sidewalk reduced the depth of the lot considerably. This factor was apparently overlooked by the draftsman who prepared the deed when Mr. E. J. Robinson later sold the property in 1925, and the description of the lot as being 89 feet deep has been erroneously carried forward through several subsequent sales of the lot in question. Although the exact date of the widening of Troy Street

nowhere appears in the record, from the testimony of Barnes, it was apparently accomplished between the time he sold the lot, February 20, 1920, and October 31, 1925.

A qualified surveyor, M. J. Steensland, was employed by complainant to survey the property in question and prepare a plat to indicate the true boundary between the lots of complainant and respondent. His survey, completed on October 8, 1958, was based on the abstract of complainant's lot and showed the true boundary to be as contended by complainant. This was the line adopted by the court below as being the true boundary line between the two lots.

A surveyor employed by respondent, Horace Adams, found the true line to be as claimed by respondent. However, he admitted that his survey was based entirely on the description contained in respondent's deed, that he did not use an abstract of respondent's lot in conducting his survey, nor did he attempt to determine the south boundary line of the complainant's lot through use of a deed or abstract to such property of complainant.

We are satisfied from the evidence presented that the true boundary line between the lots involved here was correctly determined by the decree of the trial court, and that the plat prepared by Steensland accurately establishes the boundary between the land of the two parties.

## II.

■ We now turn to the question of whether appellant has acquired title to any of the land north of the true boundary line by adverse possession.

The disputed strip of land extends approximately 15 to 16 feet into the property of appellee, and runs along the entire northern boundary of appellant's lot. Evidence indicates that at the time appellant purchased her lot in 1943, her husband erected a fence along what they considered to be the northern boundary of their property. They did not use a survey in constructing this fence, but merely made their own measurements, relying on the 89 foot depth stated in her deed, excluding the sidewalk running parallel to Troy Street. Although there is some confusion in the testimony, it appears that portions of the fence fell into disrepair and the fence posts were replaced by other posts in 1946. However, the replacement posts were not placed in the same positions as the old posts, but rather, were placed in such a fashion that the fence ran at an angle to the claimed northern boundary of appellant's property and, beginning at the northwest corner post, trailed off in a southeasterly direction, the northeast corner being relocated some 13 feet south of its original position. Then too, the northwestern corner of the fence was actually some 5 to 6 feet east of the true western line of appellant's lot. However, all of the property included in the rebuilt fence was also included in the old fence. It is thus readily apparent that the fence, as it was ultimately situated, in no way defined the limits of appellant's property as set forth in her deed. Although there is some question from the evidence whether appellant is claiming the entire strip purportedly defined in her deed, or whether she is merely claiming that portion of the land south of the fence, it is clear that appellant was in possession of the portion of the land south of the fence from the time of its construction in 1943 until this suit was filed in 1954, thus providing ample time for acquisition of title by adverse possession, provided the other requirements are met. Appellant testified that the area was used as a garden for raising vegetables and flowers, that chickens were also kept there, and that the area was also used as a yard, the land being located to the rear of her house. The difficulty facing us, is in trying to determine whether her possession was adverse to appellee.

There are many decisions of this court dealing with the problem of adverse possession between coterminous land owners. The very early cases of this court strictly

applied the "subjective intent" rule which looks to the intention of the possessor as the controlling factor. This line of cases holds that unless the possessor has actually formed an intention to hold the strip, even though it is beyond the true line, the possessor's position is not adverse. Brown v. Cockerell, 33 Ala. 38; Alexander v. Wheeler, 69 Ala. 332; Davis v. Caldwell, 107 Ala. 526, 18 So. 103; Hess v. Rudder, 117 Ala. 525, 23 So. 136, 67 Am.St.Rep. 182; Ashford v. McKee, 183 Ala. 620, 62 So. 879. The rule is stated with great clarity in Hess v. Rudder, as follows:

"* * * Possession, to be adverse, must be held under a claim of right, and there can be no adverse possession without an intention to claim title. Hence it is essential to the proper determination of the character of the possession to consider the intention with which it was taken and held. If one *occupies* land up to a certain fence, because he believes that to be the line of his land, but ·not having any intention to *claim* up to the fence, if it should be beyond the line, the intent to claim title does not exist coincident with the possession, and the possession up to the fence is not, therefore, adverse."

 This rule, however, was modified by later cases and in the case of Smith v. ·Cook, 220 Ala. 338, 124 So. 898, this court ·crystalized this modification and stated very precisely the modified rule which still prevails in this State.

"* * * Appellants claim that the conclusion is controlled by principles of law settled by this court, which for convenience we will restate. If two coterminous proprietors agree on a boundary line, and each occupies to its location, the possession is presumed adverse, and .after ten years has the effect of fixing .such line as the true one. Turner v. .DePriest, 205 Ala. 313, 87 So. 370; ·Copeland v. Warren, 214 Ala. 150, 107 .So. 94; Gunn v. Parsons, 213 Ala. 217, .104 So. 390; Mink v. Whitfield, 218 Ala.

334, 118 So. 559; Smith v. Harbaugh, 216 Ala. 202, 112 So. 914. If a coterminous landowner holds actual possession of the disputed strip under a claim of right openly and exclusively for a continuous period of ten years, believing that he is holding to the true line, he thereby acquires title up to that line, even though the belief as to the correct location originated in a mistake, and it is immaterial what he might or might not have claimed had he known he was mistaken. Smith v. Bachus, 201 Ala. 534, 78 So. 888; Hoffman v. White, 90 Ala. 354, 7 So. 816; Hopkins v. Duggar, 204 Ala. 626, 87 So. 103; Shepherd v. Scott's Chapel, 216 Ala. 193, 112 So. 905.

"There is, however, a limitation or an additional principle that,· if the occupancy to a line is with no intention to claim to it if it should be beyond the true location of the boundary, such possession is not adverse. Hess v. Rudder, 117 Ala. 525, 23 So. 136, 67 Am.St.Rep. 182; Smith v. Bachus, 195 Ala. 8, 70 So. 261; Hodges v. Sanderson, 213 Ala. 563, 105 So. 652.

"But there is a further provision ingrafted on the foregoing principle that, *when one of the coterminous proprietors builds a fence as the dividing line and occupies and claims to it as such, with knowledge of such claim by the other, the claim of the former is presumptively hostile and the possession adverse.* Hess v. Rudder, supra; Smith v. Bachus, 195 Ala. 8, 70 So. 261, quoted in Shepherd v. Scott's Chapel, supra. [Emphasis supplied.]

"If the land is woodland, there must ordinarily 'be such a continuous and persistent cutting of timber or wood from the tract, as to be evidence of a claim of ownership, and an advertisement to the world that the party is occupying the entire tract' (Green v. Marlin, 219 Ala. 27, 121 So. 19, 22, and citations), or some other continuous acts of adverse posses-

sion (Montgomery v. Spears, 218 Ala. 160, 117 So. 753)."

In the present case, the testimony was confused and contradictory. This is certainly true of appellant. On cross-examination, she testified as follows:

"Q. Over here on the west, where the fence is some eight feet from the line, you don't mean by that because your fence is not on the line, that you don't claim that eight feet, do you?

"A. Like I told you, we didn't know where the line was because we didn't have it surveyed.

"Q. You went out there and put a fence out there, but whether or not you were putting a fence on the line, you didn't know, did you?

"A. No, we didn't.

"Q. The line I have just asked you about, over here on the west side, the fact that the fence is off the line, you don't say by that you are giving up and not claiming that eight feet over there, do you?

"A. We claim what the deed calls for.

"Q. In one instance, you claim what the deed calls for, and in another instance, you claim to the fence. Now, which are you claiming, the fence, or the deed?

"A. I just don't know.

"Q. You don't know whether you are claiming under the deed or under the fence?

"A. I am claiming what the deed calls for."

Appellant stated that she did not employ an attorney to examine the title at the time she purchased the property. She testified that she did not claim to have purchased or acquired any of the property north of her own.

"Q. Have you ever, at any time, said to Mrs. Brown [complainant], as the owner of her property or anybody else, that you were trying to acquire any of their property?

"A. No.

"Q. Have you ever intended to acquire or take any of her property?

"A. No.

"Q. The only intention that you have had, any of the time, is to acquire the property that you bought from the man Dawson, in Selma?

"A. That's right."

On redirect, in answer to a series of leading questions by her attorney, appellant testified that at the time she purchased her property, she intended to take the 89 feet called for in the deed.

"Q. You thought that you were getting a lot 89 feet deep on Troy Street, didn't you?

"A. Yes, sir.

"Q. When you moved there and bought that property, you intended to have that 89 feet?

"A. Yes, sir.

"Q. You intended and you expect to take whatever property was located in that area, in order to get your 89 feet?

"A. Yes, sir.

"Q. You thought when you built that fence, that the fence was the north side of your property, didn't you?

"A. Yes, sir.

"Q. And if it was over on Mrs. Steven's part at that time, you still intended all during the time you held it, for it to be your property, didn't you?

"A. I did.

"Q. You do today, don't you?

"A. Yes, sir.

"Q. You held it for the purpose of acquiring title to it, didn't you?

"A. I did.

"Q. If you didn't have title, you held it for that purpose?

"A. Yes, sir."

Then, on recross-examination, appellant testified as follows:

"Q. During all this time, or at least since 1946, you have known that Mrs. Brown was claiming that you were over on her lot?

"A. Yes, sir.

"Q. Mrs. Smith, you answered a while ago that you did not intend to take any of Mrs. Brown's lot?

"A. I did not.

"Q. You still don't intend to take any of her lot?

"A. I do not.

"Q. What you intend to do is claim the property that you purchased, but not to encroach over or take any of Mrs. Brown's lot?

"A. Just what we paid for is all I want.

"Q. Insofar as Mrs. Brown's lot is concerned, you have not attempted and do not now attempt to take any part of the lot that is her lot, do you?

"A. I don't want any of her lot.

"Q. Will you answer me if you are trying to take or attempted to take any of Mrs. Brown's lot?

"A. To the best of my knowledge, I haven't."

On further redirect examination, appellant testified as follows:

"Q. The property that is south of that fence, you claim is your property?

"A. I do.

"Q. You expect to take that by law or by any other means you can get it?

"A. I do."

Although this testimony is contradictory, in that appellant stated that she intended to claim all of the property south of the fence by whatever means necessary and at the same time she did not intend to take any of the appellee's lot, we must bear in mind that the appellant was a woman of a limited sixth grade education and was, therefore, likely to be confused by the questions of the attorneys. With this in mind, along with the rule from Smith v. Cook, supra, which holds that there is a presumption that a claim is adverse where the possessor builds a fence claiming it to be a line fence with knowledge by the other party, we hold that the appellant's possession of the land up to the fence was hostile and adverse.

In the case of Sylvest v. Stowers, 276 Ala. 695, 166 So.2d 423, the appellant who had erected a fence as a line fence under a mistake of fact as the true boundary, stated on cross-examination, he would have helped move the fence if he had known what the true line was. In that case the court rejected the contention of the appellee that this was an admission of the absence of the intention to claim to the fence, and stated as follows:

" * * * Appellee contends that the statement, 'I would have helped her move the fence on up to the proper line', is an admission of the absence of intention to claim to the fence. We cannot agree.

"This court has made it abundantly plain that one does not have to be a willful landgrabber or dishonest in order to acquire title by adverse possession. We quote from Brantley v. Helton, 224 Ala. 93, 139 So. 283:

" 'Adverse possession as between adjoining landowners, where a question of

538

boundary line is presented, has been many times declared by this court. When the parties agree upon the location of a line fence, or one of them proceeds to inclose his property, and erects a fence intended as a line fence, holds actual and exclusive possession to it as such, his possession is adverse, and, if continued for ten years, ripens into title.

" 'If the location of the fence is merely tentative, not intended to define a permanent boundary, and possession is taken, not under claim of title to·the fence, but merely to the true line, to be thereafter ascertained, such possession is not adverse.

" 'The controlling fact is one of intention. The mere fact that a mistake was made in locating the boundary, and there was never an intention to claim the property of another, does not negative adverse possession. Such a rule would make adverse possession to depend upon bad faith.

" 'Was there an intention to fix a dividing line, each to have the enjoyment of his own property, and was possession taken and held accordingly, each claiming the property held as his own, because he considered it his own? If so, the possession is adverse. Of course, adverse possession may arise from boldly and knowingly taking the property of another, or taking it regardless of whether he believes it is his, thus ousting the true owner, and holding in hostility to him.

" 'But in law a hostile possession is not limited to any such case. It is hostile when held as his own, claimed as his own, whether by mistake or willfully.' "

In the present case we feel that the appellant has established that her claim was adverse and that she has acquired title to the property up to the fence.

The decree appealed from is reversed and the cause remanded to the trial court for rendering a decree not inconsistent with this opinion.

Reversed and remanded with directions.

LIVINGSTON, C. J., and SIMPSON and COLEMAN, JJ., concur.