504 So.2d 250 (1987)
Vada SIMS, Joy Brown, and Danny Stevens
v.
Clarence VANDIVER.
85-351.
Supreme Court of Alabama.
February 27, 1987.
*251 R. Stephen Bolling, Muscle Shoals, for appellants.
Robert J. Harris of Munsey & Ford, Tuscumbia, for appellee.
PER CURIAM.
This appeal involves a boundary line dispute between coterminous owners of real property. The trial court determined the boundary line in accordance with Clarence Vandiver's claim of adverse possession. We affirm.
The common boundary line described in each party's respective deed is the East line of the Northwest ¼ of the Northeast ¼ of Section 27, Township 5 South, Range 10 West. This line runs in a north-south direction, with Vandiver's property lying east of that quarter-section line and the appellants' property lying west of that quarter-section line.
The appellants are the heirs of James W. Stevens, who died intestate on March 5, 1984. Stevens acquired his title by conveyance from Charles Timbers on October 2, 1975. Timbers acquired his title by conveyance from Manuel Chaney in 1973. Chaney and his family acquired title to the property sometime in the 1920's.
Vandiver acquired title to his property in 1934 by conveyance. At the time Vandiver acquired his title, there were two fences running in a north-south direction, parallel to each other and to the government quarter-section boundary line dividing the Vandiver and Chaney properties. There was a lane between the two fences. Manuel Chaney's father erected the west fence believing that the quarter-section boundary line dividing his and Vandiver's property ran between the two fences.
When Vandiver took title to his property in 1934, he began to use the lane between the fences to run livestock, to cut timber from it, and to locate a dog pen on it.
Over the years the fences became old and in need of repair or replacement. *252 Sometime around June 1984, after the death of James Stevens, Vandiver began replacing the west fence. The Stevens heirs protested the location of the fence and attempted to stop Vandiver from rebuilding it. Unsuccessful in their attempt to keep the fence from being replaced, the heirs had a survey conducted according to the property description in their deed. The survey revealed that the two fences and the lane running between them were located on their property. The Stevens heirs then filed a petition with the Circuit Court of Colbert County asking the court to establish the true boundary line between the parties. Vandiver answered, claiming the property up to the West fence by adverse possession.
In order for a coterminous landowner to establish title to land by adverse possession, he must prove open, notorious, hostile, continuous, and exclusive possession of the disputed property for a period of ten years. Tidwell v. Strickler, 457 So.2d 365 (Ala.1984).
The Stevens heirs present two arguments on appeal. They first contend that Vandiver lacked the requisite intent to obtain the property by adverse possession and cite Smith v. Brown, 282 Ala. 528, 213 So.2d 374 (1968), as controlling. This Court interpreted Smith v. Brown in Reynolds v. Rutland, 365 So.2d 656, 657-58 (Ala.1978):
"In Smith v. Brown, ... it was held that, if a coterminous landowner holds actual possession of a disputed strip under claim of right, openly and exclusively for a continuous period of 10 years, believing that he is holding to the true line, he will acquire title to that line, even though the belief as to the correct location of the line originated in a mistake. It is immaterial what he might or might not have claimed had he known he was mistaken. While intent to claim the disputed strip is required, there is no requirement that the intent be to claim property of another, as such a rule would make adverse possession dependent upon bad faith. Possession is hostile when the possessor holds and claims property as his own, whether by mistake or willfully. Smith v. Brown, supra.
"It appears that, in the present case, Appellees never intended to claim property belonging to another, but only intended to hold to the true line...."
Vandiver stated on cross-examination that he never intended to claim property that was not his; however, he said he believed the property in dispute was his. It is not necessary that a coterminous landowner be correct in his belief as to the true boundary line in order to possess the requisite intent to adversely obtain title to real property. Robertson v. Fincher, 348 So.2d 466 (Ala.1977). Thus, the fact that Vandiver testified he did not intend to take property that was not his is not fatal to a showing of the intent necessary for acquisition of property by adverse possession.
The second argument made by the Stevens heirs is that the boundary line is located on a government survey line which is permanently fixed and cannot be relocated by acts of adverse possession.
The case law in Alabama is clear that no agreement or act of adjacent landowners can relocate a government survey line. Guyse v. Chappell, 367 So.2d 944 (Ala. 1979). However, this Court has held that if a party claims property by adverse possession beyond a government survey line, the government survey line does not change, but the boundary line between the landowners may be changed or relocated so that the government survey line is no longer the boundary line. Nelson v. Garrard, 403 So.2d 230 (Ala.1981); Guyse v. Chappell, supra. In the instant case, the trial court relocated the boundary line according to the evidence presented at trial, but did not relocate the government survey line.
A judgment establishing a boundary line between coterminous landowners on evidence presented ore tenus is presumed to be correct, and will not be disturbed on appeal unless plainly erroneous, manifestly unjust, or without supporting evidence. Drennen Land & Timber Co. v. Angell, 475 So.2d 1166 (Ala.1985); Morrison v. Boyd, 475 So.2d 509 (Ala.1985). The presumption *253 of correctness of the trial court's findings is especially strong in adverse possession cases. Drennen Land & Timber Co. v. Angell, supra.
Applying the ore tenus rule of review, we find that the judgment of the trial court is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, ALMON, SHORES, BEATTY, ADAMS and HOUSTON, JJ., concur.
STEAGALL, J., concurs specially.
STEAGALL, Justice (concurring specially).
I recognize that the holding in Reynolds v. Rutland, 365 So.2d 656, 657-58 (Ala. 1978), interpreting Smith v. Brown, 282 Ala. 528, 213 So.2d 374 (1968), is the present state of the law on this subject. I also recognize the significance of the ore tenus rule. I think it would be well to pause, however, and reflect on the practical result of the holding in Reynolds, supra, and the holding in this case.
In my opinion, it is no longer necessary to prove "adverse" or "hostile" possession in order to move boundary lines. The proof of any act of actual possession seems to be sufficient. We no longer look to the true location of government survey lines as called for in deeds, the intention of the parties, or the original reason for erecting fences as having any significant probative value to establish land lines. We merely look to see if we can find a rusty wire fence running in the general direction of a government survey line, coupled with some act of possession, and therefrom establish a new boundary line. In my opinion, we should now speak of acquiring title by possession (or really unintentional possession) rather than of acquiring title by adverse possession.
Common practice establishes that many times fences are erected for convenience and not to indicate a boundary line. In some instances, a landowner knows that his boundary line lies further in a certain direction but he places the fence in such a manner that a small portion of his land lies beyond the fence, with no intention of establishing the fence as a boundary line. In other instances, fences are built by agreement of the parties for the sake of convenience and with no intent to establish a new boundary line. A few short years pass, the wire gets rusty, ownership changes, and under our present case law, the fence becomes a boundary line.
In this case, the appellee testified on cross-examination as follows:
"Q. Okay, let me see if I've got this right, Mr. Vandiver. You held to that fence line, believing it to be the true boundary line?
"A. Yes, sir.
"Q. Okay, and had you known that it was not, you would not have come in there and claimed something that wasn't yours?
"A. No."
It seems rather harsh to me that we now divest title to land described by government survey lines without showing clearly that the possession divesting such title is adverse and hostile. I think this entire subject should be re-examined.