This is a boundary-line dispute between owners of coterminous lands in Dale County.
Robert C. O'Neal and Robert C. O'Neal, Jr., (the "O'Neals"), the owners of an 80-acre tract of land in Section 7, sued Bernice Ramsey and Lillie Pearl Ardis. The O'Neals subsequently sold their 80 acres to Anthony Byrd, and Byrd intervened in the lawsuit. Ramsey owns an approximately 4.7-acre parcel of land that has as its southern border the northern border of the O'Neal-Byrd property. The O'Neals sued after Ramsey had torn down a fence they had constructed; Ramsey claimed the fence had encroached on her property. She put up a fence that blocked the O'Neals' use of an easement by prescription across the property of Ardis (the property was later sold to Ramsey). The easement had been purchased by the O'Neals and later sold to Byrd.
In their complaint, the O'Neals requested (1) that the Court determine and fix the true location of the boundary between the parties' property, (2) that the Court establish the existing dirt road as an easement for ingress and egress across the Ardis/Ramsey property to the property owned by the O'Neals and subsequently by Byrd, (3) that the Court issue a temporary order allowing use of the road for ingress and egress during the pendency of the proceedings, and (4) that the court award compensatory and punitive damages for the defendants' alleged willful, intentional, wrongful, and malicious destruction of the fence the O'Neals had erected. Ramsey and Ardis denied the allegations of the complaint.
The trial judge viewed the property before the trial and ordered that an independent surveyor survey the boundary line. Because the original court-appointed surveyor was unable to timely complete the task, Kinsaul and Associates, a surveying firm, was appointed by the court to make an independent survey.
After conducting an ore tenus hearing, the trial court entered the following order, on October 11, 2000:
 "This matter having come before this Court on an initial hearing and again on a final hearing on September 6, 2000, with the parties and their attorneys and sworn testimony was taken and documented evidence received from which this Court does hereby ORDER, ADJUDGE AND DECREE that the Defendant, Bernice Ramsey, is awarded the 3.557 acre plus or minus tract of land immediately South of where her residence now [sits]. The Plaintiffs, Robert C. O'Neal and D. Anthony Byrd, are to execute a [quitclaim deed] to the Defendant, Bernice Ramsey, within fifteen days of this ORDER for the following property:
"[Property description omitted]
 "That D. Anthony Byrd is awarded 8.182 acres plus or minus lying West of the property of the Defendant's and North of other property owned by D. Anthony Byrd and East of property owned by Walter S. Dykes. The Defendants, Bernice Ramsey and Lillie Ardis, are ordered to execute a [quitclaim] deed to D. Anthony Byrd within fifteen days of the date of this ORDER for the following legal description:
"[Property description omitted]
 "The existing dirt drive/road shall be encompassed in the property of Bernice *Page 326 
Ramsey and Lillie Pearl Ardis. However, [ingress to and egress from] all parties' property shall be allowed over the existing dirt drive/road. All permanent structures and fixtures resting on the [lands described above] shall be the property of the [grantees] in the aforementioned [quitclaim deeds].
 "It is further ordered by this Court that the cost ($3780.00) of the Court ordered survey completed by Kinsaul Associates shall be divided equally between the Plaintiffs and Defendants and is to be paid directly to Kinsaul Associates within fifteen days of the date of this ORDER. The Court is satisfied that the survey completed by Kinsaul Associates did establish the forty line in question.
 "All other relief . . . sought or requested, but not addressed in this ORDER is denied.
"Done this 11th day of October, 2000.
"/s/Charles L. Woods
"Circuit Judge"
Ramsey and Ardis filed a "Motion to Vacate Judgment and Motion for New Trial," arguing that the court's order "is contrary to law in that the court is without jurisdiction to order a land swap in a case involving a land line dispute". The court denied their motion, and they appealed. On appeal, neither side makes an argument concerning those portions of the judgment granting the easement and denying damages. The sole issue before the Court is whether the trial court's order requiring the parties to exchange quitclaim deeds, instead of merely determining and fixing the true boundary line between the properties, amounted to a "land swap" and thus exceeded the court's authority. We conclude that the trial court did indeed exceed its authority. We, therefore, reverse and remand.
In 1983, Ardis and her husband sold an 80-acre tract of land to Burion Bundy and Doras Bundy. The Bundys sold this same tract to the O'Neals in 1985. In 1998, the O'Neals sold the property to D. Anthony Byrd.
This property was described in the deeds as the south one-half of the southeast quarter of Section 7, Township 6 North, Range 23 East. The property purchased by the O'Neals and later sold to Byrd had an easement by prescription across the property of Ardis. This property was later sold to Ramsey.
Ramsey's property, which she purchased on January 16, 1995, is described by a metes-and-bounds description and is described as being "in and a portion of the northeast quarter of the southeast quarter of Section 7, Township 6 North, Range 23 East." Other than filing a joint answer with her daughter, Bernice Ramsey, Ardis did not defend this lawsuit.
The record does not indicate why the trial court ordered the "land swap." The O'Neals, in their brief, state that the court entered the order in an attempt to bring about an equitable solution and because Ramsey had placed her mobile home within 10 feet of the established property line and her septic tank and the field lines for her septic tank were on the O'Neal-Byrd property.
Pursuant to Ala. Code 1975, § 35-3-2, in a boundary-line dispute "[t]he court shall determine any adverse claims in respect to any portion of the land involved which it may be necessary to determine for a complete settlement of the boundary lines and shall make such order respecting costs and disbursements as it shall deem just." Adverse possession is a defense frequently asserted in cases involving boundary-line disputes. A coterminous landowner attempting to establish title by *Page 327 
adverse possession must prove open, notorious, hostile, continuous, and exclusive possession of the disputed property for a period of 10 years. Sims v. Vandiver, 504 So.2d 250 (Ala. 1987). Although the phrase "adverse possession" was referred to several times during the trial, it was not pleaded as a defense and no effort was made to prove the elements of adverse possession. We find no evidence to support a claim of adverse possession.
Section 35-3-3, Ala. Code 1975, provides:
 "The judgment shall locate and define the boundary lines involved by reference to well-known permanent landmarks, and if it shall be deemed for the interest of the parties, after the entry of judgment, the court may direct a competent surveyor to establish a permanent stone or iron landmark in accordance with the judgment from which future surveys of the land embraced in the judgment shall be made. Such landmarks shall have distinctly cut or marked thereon `judicial landmark.' The surveyor shall make report to the court, and in his report shall accurately describe the landmark so erected and define its location as nearly as practicable."
The only reference to the boundary line in the court's order is this statement: "The Court is satisfied that the survey completed by Kinsaul 
Associates did establish the forty line in question." The record contains no direction to the surveyor to mark the boundary line with "judicial landmarks," and it contains no clear judgment holding that the "forty line," i.e., the northern line of the south one-half of the southeast quarter of section 7, Township 6 North, Range 23 East, is the true boundary line between the two properties even though this is the only boundary line supported by the evidence.
The court-ordered survey prepared by Kinsaul Associates was run from a point of beginning at the corner marker of the northeast corner of the south one-half of the southeast quarter of Section 7, a recognized landmark, as determined by the original survey of the area in the 1800s. The survey by Wiregrass Engineering, Inc., offered into evidence by Ramsey plotted the location of Ramsey's 4.7 acres as described in her deed beginning from pins purportedly placed by another surveyor in 1988. In that survey, no effort was made to locate the running section line because the landowner, Ramsey, did not request it. The Wiregrass Engineering surveyor acknowledged that the property described in Ramsey's deed encroached over the forty line.
Instead of establishing the true boundary line between the properties, the trial court, it appears, intended to establish a new boundary line by ordering quitclaim deeds executed to effectuate a "land swap." The O'Neals argue that Ala. Code 1975, § 12-11-31 or § 12-11-33, authorizes the circuit court to order a "land swap" such as that ordered in this case. We disagree. Section 12-11-31 provides in pertinent part:
 "The powers and jurisdiction of circuit courts as to equitable matters or proceedings shall extend:
 "(1) To all civil actions in which a plain and adequate remedy is not provided in the other judicial tribunals.
". . . .
 "(5) To establish and define uncertain or disputed boundary lines, whether the complaint contains an independent equity or not."
Section 12-11-33 provides:
 "Circuit courts, when exercising equitable jurisdiction, must take cognizance of the following cases:
"(1) When the defendants reside in this state. *Page 328 
 "(2) Against nonresidents, when the object of the action concerns an estate of, lien or charge upon lands or the disposition thereof, or any interest in, title to, or encumbrance on personal property within this state, or where the cause of action arose, or the act on which the civil action is founded was to have been performed in this state."
A judgment establishing a boundary line between coterminous lands, based on evidence submitted ore tenus, is presumed correct, if it is supported by credible evidence. Nelson v. Styron, 524 So.2d 353 (Ala. 1988). Further, such a judgment will be reversed only if it is plainly erroneous or manifestly unjust. Reeves v. Lord, 487 So.2d 879 (Ala. 1986).
This Court has held, however, that it is error for a trial court to establish a line not supported by the evidence presented by either landowner. In Wilson v. Cooper, 256 Ala. 184, 54 So.2d 286 (1951), the trial court fixed the boundary line between coterminous lands; it was to run along a line equidistant between the two lines the owners had agreed as the true line. This Court reversed, stating: "[N]either party claims that the line established by the trial court is the true boundary line dividing their lands, nor did either party offer evidence to prove that such a line was the true line." 256 Ala. at 185, 54 So.2d at 287.
In a case similar to the present case, Catrett v. Crane, 295 Ala. 337,329 So.2d 536 (1976), a case in which both parties appealed, the trial court failed to fix as the boundary line the line asserted as the true line by either party, but established a different line as the boundary line and ordered the parties to exchange deeds to accomplish the court's division of the disputed property. This Court reversed, finding no evidence to support a judgment establishing the line fixed by the trial court.
In this case we have found no evidence to support a claim of adverse possession. Furthermore, no evidence supports any boundary line other than the "forty line." If, as it appears, the court intended the exchange of deeds to establish a new boundary line between the properties, then we must hold that no evidence in the record supports an order establishing a new line. The role of the court in a boundary-line dispute is to determine and fix the existing boundary line, not to create a new one.
No evidence supports the trial court's judgment establishing a new boundary line to replace the line set out in the parties' deeds and shown on the court-ordered survey admitted into evidence. Accordingly, we reverse the judgment and remand the cause for an order or proceedings consistent with this opinion.
REVERSED AND REMANDED.
Moore, C.J., and See, Brown, and Harwood, JJ., concur.