SHORES, Justice.
This is a boundary line dispute between coterminous landowners involving lake property located in a platted residential subdivision, Riviere Estates, in St. Clair County.
James and Sylvia Martin, owners of lot 23 in Riviere Estates, initiated this suit on August 21, 1987, against Ms. Bushnell, who owns lot 24. The Martins filed suit after Ms. Bushnell notified them that she wanted them to remove a portion of their fence, which she claimed encroached on her property. In their complaint, the Martins set out the legal descriptions of lots 23 and 24, alleged that their predecessors in title had erected the fence more than seven years earlier without challenge, and further asserted:
“[t]hat the property in dispute was built up by the Plaintiffs’ predecessor in title with the permission of Alabama Power Company and dirt was placed in that area to prevent the flooding of the Plaintiffs’ residence; that the Plaintiffs and their predecessors in title have cut the grass and maintained the ... said property for over ten (10) years and the property line between said property have [sic] been recognized by the plaintiffs and the defendant as the boundary line between said parties.”
The Martins requested the court to determine the true boundary line between the lots.
Ms. Bushnell filed an answer denying the substantive allegations of the complaint. She also filed a counterclaim alleging trespass. The Martins twice amended the complaint, each time claiming a different “true boundary line” by making reference to a survey completed at their request by Billy R. Martin. Ms. Bushnell filed an amended counterclaim alleging trespass and various other unlawful and malicious acts on the part of the Martins, seeking compensatory and punitive damages, and demanding a jury trial on all counts. Thereafter, the Martins moved to sever the counterclaim on grounds that the allegations were frivolous and were designed to harass and intimidate them. Ms. Bushnell filed an objection to the motion to sever, and the motion was denied.
After an ore terms trial, the court viewed the premises and entered an order establishing the boundary line at a place consistent with the line the Martins had pleaded in their first amended complaint. The court dismissed Ms. Bushnell’s counterclaim with prejudice. Ms. Bushnell filed various post-judgment motions and then appealed. We reverse and remand for further proceedings.
In 1972, Ms. Bushnell purchased lot 24, and Worth and Sara Little purchased lot 23. The legal description of lot 24, as set out in the plaintiffs’ complaint, is as follows:
“Lot # 24, Section A according to map or plat of Riviere Estates, Inc. Subdivision recorded in Plat Book 1962, Page 75, in the office of the Judge of Probate of St. Clair County at Pell City, Alabama.
*94 “LESS AND EXCEPT a parcel off the southwest corner of said lot described as follows: Commence at the Northwest corner of Lot # 24 of the Riviere Estates Subdivision, St. Clair County, Alabama; thence in a southwesterly direction along the northwest line of said lot for a distance of 417.24 feet to the point of beginning of property herein described; thence deflect an angle of 81°13' to the left for a distance of 48.3 feet to a point on the 465.0 contour, the pool level of the Logan Martin Lake; thence in a southwesterly direction along the 465.0 contour to the northwest line of said Lot
# 24; thence in a northeasterly direction along the northwest line of Lot # 24 for a distance of 160.56 feet to the point of beginning, being in and a part of Lot # 24 of the Riviere Estates Subdivision in Section 31, Township 17 South, Range 4 East, St. Clair County, Alabama.”
The legal description of lot 23 includes the parcel of land that is excepted from lot 24. The property in dispute lies northeast of the area excepted from lot 24, and consists of a grassy area extending up the hill from the lake. For a better understanding of the case, we have attached a copy of the survey the Martins commissioned and referred to at trial. The survey was admitted into evidence.
The Littles constructed a dike on lot 23 in 1972, and they occupied the land until 1976. The court received testimony that from 1972 through 1976, the Littles and the Bushnells both maintained the disputed area surrounding the boundary line. Sara Little testified by deposition, and her son, Barry Starr, testified before the court. Each witness examined photographs of the lots and gave vague descriptions of their understandings of the location of the boundary line in the area now in dispute, while acknowledging that no one had pointed out the precise boundary line to them. Their testimony differed as to the proper location of the line in the area in dispute. Ms. Little and her son stated that they cut the grass in the area, but that they did nothing to mark the boundary.
The deposition of Fair Sutherlin, the plaintiffs’ other predecessor in title, was admitted into evidence. George and Fair Sutherlin acquired lot 23 in 1976 and sold it to the Martins-in 1985. Ms. Sutherlin testified that, to her knowledge, lot 23 was not surveyed during the time they owned it. She stated that the seawalls at the lake’s edge and the swell of the dike were the only noticeable boundary markers between their lot and Ms. Bushnell’s lot. She was unable to describe the boundary line with precision, but stated, “you had to determine where that swell was,” and “when you came off the dike, I knew I was on Dr. Bushnell’s land, even though we maintained this land.” Ms. Sutherlin marked what she believed to be the boundary line on a copy of Ms. Bushnell’s survey. The boundary she marked differs greatly from the line claimed by the Martins at trial.
In 1978, the Sutherlins began building a fence near the area now in dispute in order to keep their dogs in the yard. Ms. Suther-lin testified that Ms. Bushnell informed them that the fence was on her property, so they moved it back several feet. Ms. Sutherlin stated that she and her husband sowed and cut grass on the property now in dispute, and on property they knew belonged to Ms. Bushnell. She also said she did not claim anyone’s property, but just cut the grass and did not pay attention to whose it was.
James Martin testified that he hired Billy Martin to survey lot 23 in 1987. The survey Martin completed was admitted into evidence, and it shows that the disputed property lies entirely within the boundaries of lot 24, which is owned by Ms. Bushnell. Mr. Martin stated, however, that after the survey was completed, Mr. Bushnell pointed out, in a general way, a different property line in the grassy area now in dispute, and indicated that the Sutherlins and Lit-tles had possessed up to that line. Mr. Martin acknowledged that no fence, trees, or shrubbery clearly defined the line between the parcels. He stated that he sowed grass seed and mowed the grass in the disputed area.
*95 On rebuttal, Mr. Martin was asked about the detailed drawing located in the upper left corner of the survey made by Billy Martin, a copy of which is attached to this opinion. He testified that the triangle “would have been a compromise rather than going to court.” He stated, however, that he had always possessed and claimed up to the line Mr. Bushnell described to him, which encompasses a larger area and which is marked on the attached survey as the disputed property. Although the upper left corner of the survey contains a note stating that Mr. Martin was going to try to purchase the compromise triangle drawn in the corner, Mr. Martin denied offering to purchase any of the property, which, in this lawsuit, he contended belonged to him.
Derrol Luker, a registered engineer and surveyor, testified that Ms. Bushnell requested that he survey her lot, but that he refused, because, in his opinion, he could not complete an accurate survey unless he found all four existing corners and because Ms. Bushnell threatened to sue him if he did not survey the lot. He admitted, on cross-examination, that before he rejected the job, he did not examine the lot or attempt to locate the corner pins.
Ms. Bushnell testified that she has had her lot surveyed three times since 1972, and has continuously possessed and maintained the property up to the boundary line shown on the surveys. Specifically, she stated that, in the area now in dispute, she has mowed the grass, planted trees and shrubs, cut trees, and placed logs to mark the boundary line. She also testified that she has paid taxes on the lot.
Robbin Phillips surveyed lot 24 in 1987 at Ms. Bushnell’s request, and a copy of his survey was admitted into evidence. He testified that he found several corner irons in positions that closely matched where corner irons would have been placed pursuant to the legal description of Ms. Bushnell’s lot, so he used the established corners to survey the property. Mr. Phillips stated that one of the corners of lot 24 was inside the fence built by the previous owners of lot 23. The survey of lot 24 also established that the disputed property claimed by the Martins lay within the boundary lines of lot 24. Mr. Phillips testified that he compared the survey he completed for Ms. Bushnell with the survey Billy Martin completed for the Martins, and that he found only a minor discrepancy of one-half inch between the two surveys.
Mr. Bushnell testified that he had a conversation with Mr. Martin regarding the disputed property line before this suit was initiated. The boundary line he pointed out was similar to the line set out in the surveys and not the boundary line claimed by the plaintiffs.
After hearing the testimony and viewing the premises, the trial court found that the original points of survey of the subdivision had been destroyed and/or eroded by the flood waters of the lake. The court then ordered, in pertinent part:
“1. That the aforesaid boundary line between the parties hereto shall commence at the street right of way and follow the line from said street as shown on the survey of Billy R. Martin for a distance of 392.51 feet at which point said boundary line shall proceed in a southeasterly direction 57.44 feet to the west corner of the Defendant’s seawall.
“2. That within fifteen (15) days of the date of this decree George McGinnis, a registered surveyor, shall proceed to survey and mark said property line and furnish this Court with a detailed survey of said property line at which time this Order shall be amended to establish said boundary line per said survey.”
Surveyor George McGinnis plotted the boundary line on a survey map as ordered by the court, and thereafter the court did not amend the boundary line it established in the order.
On appeal, Ms. Bushnell primarily argues that the court erred when it relocated the boundary line established in the subdivision plat and the parties’ deeds. She claims that the court’s order must have been based on adverse possession, and that there is no credible evidence in the record to support the order. Ms. Bushnell also argues that the court erred when it dismissed her counterclaim alleging trespass.
*96 Coterminous landowners may alter their common boundary line by agreement and possession for ten years, or by adverse possession. Wallace v. Putman, 495 So.2d 1072, 1076 (Ala.1986). While a judgment establishing a boundary line between coterminous landowners, based on evidence submitted ore tenus, is presumed correct, that judgment must, nevertheless, be supported by credible evidence. Nelson v. Styron, 524 So.2d 353, 354 (Ala.1988). The trial court’s judgment will be reversed only when it is plainly erroneous or manifestly unjust. Reeves v. Lord, 487 So.2d 879, 880 (Ala.1986). Admittedly, it is a rare case when this Court will overturn a finding by a trial judge who hears a boundary line dispute presented ore tenus. However, this is one of those rare cases, because we find no credible evidence either of an agreement between the parties and possession for ten years, or of adverse possession.
Initially, we note that the theory upon which the Martins proceeded at trial is unclear. They alleged in their complaint that they and their predecessors in title had maintained the disputed property for over ten years, suggesting they were relying on adverse possession. However, at trial, when Ms. Bushnell moved for a directed verdict based on insufficient proof of adverse possession, the following exchange took place:
“MR. CHURCH [Martins’ attorney]: Mr. Hill [Ms. Bushnell’s attorney], Your Hon- or, is laboring under a gross misapprehension. I am contending that what we are claiming is precisely and exactly what is described in our deed. I am not relying on adverse possession. Your Honor, we have a situation here in this case where you cannot make an accurate survey of these respective lots. The position of the Plaintiffs is that is impossible. For that reason, we are looking for the best evidence that is available to us to establish this line, and that is where the parties and their predecessors in title have acknowledged and recognized that line to be.
“THE COURT: Let me back up. Are you saying that in your lawsuit you are not relying on adverse possession?
“MR. CHURCH: Not exclusively. I am saying if it is possible to make an accurate survey of this property, that that accurate survey would come out to be exactly where we say the line is, but that’s not possible....
[[Image here]]
“MR. CHURCH: .... The only way you can [establish a boundary line] is what the parties have possessed up to and claimed up to and recognized and acknowledged as being the common boundary lines between their respective parcels of land. Now, if you call that adverse possession, that’s what it is.”
In its order, the court found that the original points of survey of the subdivision had been destroyed or eroded, suggesting that the court agreed with the plaintiffs’ contention that an accurate survey of the lots could not be made. However, the court ordered that the boundary line be set in accordance with the line set out in the survey completed by the Martins’ surveyor, and it further ordered that George McGin-nis survey the property line.
Our careful review of the record reveals no evidence to support the trial court’s alteration of the boundary line established in the parties’ deeds. The Martins’ attorney affirmatively stated to the court that they claimed no more than what was described in their deed. The Martins’ survey and Ms. Bushnell’s survey, which were virtually identical, show that none of the disputed property lies within the survey lines of the lot described in the Martins’ deed. We find no basis for the court’s determination that the original points of the survey have been destroyed, and we are particularly perplexed by this finding in view of the fact that two surveys were admitted into evidence and the Martins’ surveyor, Ms. Bushnell’s surveyor, and the court-appointed surveyor all located the original point of beginning, a ⅞⅛" pipe. Similarly, the three surveyors agreed on the location of the turnpoint on the northwest line; it is marked with a rebar. The *97 parties’ surveyors agreed on the location of the full pool level of the lake. It, too, was marked with a rebar. With these known survey points, the original boundary lines can be, and were, established with certainty.
Furthermore, nothing in the record explains or justifies the court’s order limiting the distance of the northwesterly boundary line to 392.51 feet. Neither the Martins nor any of their witnesses made reference to a distance of 392.51 feet. This distance is not contained in the legal description of either lot. The distance of 392.51 feet is noted only in the detailed drawing on Billy Martin’s survey, and when questioned about the detailed drawing, Mr. Martin ■ stated that the triangle would have been a compromise to avoid a dispute in court. He further stated that he and his predecessors in title had always claimed and possessed the disputed property beyond the 392.51 foot line ordered by the court. A court may not arbitrarily choose a boundary line between two parcels of land, Storey v. Patterson, 437 So.2d 491, 494 (Ala.1983), and, as there is no justification for the court’s order, we can only conclude that this boundary was arbitrarily chosen by the court.
Additionally, we agree with Ms. Bushnell’s claim that the Martins failed to prove the elements of adverse possession. A coterminous landowner attempting to establish title by adverse possession must prove open, notorious, hostile, continuous, and exclusive possession of the disputed property for a period of ten years. Sims v. Vandiver, 504 So.2d 250, 252 (Ala.1987). To prove a claim of adverse possession, a plaintiff must offer evidence to show the exact boundaries of the land he is claiming. Storey v. Patterson, supra. Not only did the Martins make three different claims for portions of the property described in Ms. Bushnell’s deed, but the testimony that Mr. Martin and the plaintiffs’ witnesses gave at trial with regard to the boundary line was vague, and several of the witnesses disagreed as to the location of the line.
Furthermore, the plaintiffs presented evidence showing that, prior to trial, they and their predecessors in title only seeded and cut the grass in the disputed area. They did not mark or otherwise define with any degree of precision the boundary line the Martins claimed at trial. In view of the testimony of Ms. Bushnell’s extensive and continuous use of the disputed area and her lack of notice that the Martins, or any of their predecessors in title, were claiming any property beyond the lines set out in their deeds, we find no evidence to support a claim of adverse possession. See, Rogers v. Moore, 527 So.2d 122 (Ala.1988).
We acknowledge that, according to the parties’ surveys, a portion of the Martins’ privacy fence encroaches on Ms. Bushnell’s property. However, the fence has not been in place for the requisite period of limitations and could not justify a finding of adverse possession as to even that portion of Ms. Bushnell’s lot.
At the hearing on this matter, the Martins asserted that there had been an agreement between Ms. Bushnell and the various owners of lot 23 that altered the boundary line contained in the deeds. The testimony of Mr. Martin and the witnesses on his behalf exhibited only their confusion and disagreement regarding the location of the boundary line. Mr. and Ms. Bushnell denied making any agreements altering the boundary line found in their surveys. In fact, on two occasions, Ms. Bushnell objected when she believed Fair Sutherlin’s constructions encroached on the property now in dispute. We can only conclude that there was no agreement or common understanding among the coterminous landowners to alter the boundary line between lots 23 and 24.
For the foregoing reasons, we have determined that there is no credible evidence supporting the trial court’s judgment establishing a boundary line that alters the line set out in the parties’ deeds and shown on the two surveys admitted into evidence. Accordingly, we reverse the judgment and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and JONES, HOUSTON and KENNEDY, JJ., concur.
*98 [[Image here]]