THOMAS, Judge.
Nandean Sanders appeals from a judgment of the Dallas Circuit Court (“the trial court”) in favor of E.I. Campbell, Averline Campbell, and Jerry Winston Lawrence (hereinafter collectively referred to as “the defendants”).[1]
This is the second time these parties have been before this court regarding their property dispute. See Sanders v. Campbell, 123 So.3d 531 (Ala.Civ.App.2013). In Sanders, this court set out the procedural history as follows:
*1239 “Sanders and the defendants are the owners of adjoining properties located in Dallas County. On May 13, 2009, Sanders filed a complaint asking the trial court for declarative and injunctive relief regarding a disputed strip of property (‘the disputed strip’) that Sanders and the defendants both claimed to own. On July 16, 2009, the defendants filed an answer to the complaint and a counterclaim asking the trial court to establish the boundary line between Sanders’s property and the defendants’ property, to order Sanders to ‘cease and desist from her encroachment of and efforts to claim any right, title or interest in [the disputed] property,’ and to enter a permanent injunction enjoining Sanders from trespassing on the disputed property. Sanders filed an answer to the counterclaim on July 17, 2009.
“A trial was held on May 10, 2011, at which the trial court heard evidence ore tenus. The trial court entered a judgment on April 4, 2012 (‘the April 4 judgment’), in favor of the defendants. The April 4 judgment stated:
“ ‘1. Judgment is in favor of the Defendants, E.I. Campbell, Averline Campbell and Jerry Winston Lawrence and against the Plaintiff, Na[n]dean Sanders, on account of statutory adverse possession. Defendants met their burden and properly satisfied the court that they are coterminous landowners with [Sanders] and have held actual possession of the disputed strip of land openly and exclusively for more than 10 years, believing it to be the actual property line. Strickland v. Markos, 566 So.2d 229 (Ala.1990); Kubiszyn v. Bradley, 292 Ala. 570, 298 So.2d 9 (1974).
“ ‘2. That defendants have held the land between the parties that includes the flowerbed as testified and presented in court, and three (3) feet beyond such point. Said point shall be the properly established property line for said parties. The defendants are authorized, at their expenses, to have prepared a boundary survey to reflect such and return it to this court within 60 days of the date of this order for further orders.
“ ‘3. If the boundary survey is not returned to this court within the above said 60 days, then the court her[e]by appoints and authorizes Mr. Glen McCord ... as the surveyor/land engineer, to perform said survey in this case, the cost of which will be taxed equally against the parties.’
“Sanders filed what she styled as a motion for a new trial pursuant to Rule 59(a), Ala. R. Civ. P., on April 18, 2012; the defendants filed an objection. A hearing was held on June 11, 2012; however, counsel for the defendants was unable to attend the hearing. The trial court entered an order on June 13, 2012, indicating that, at the hearing, Sanders had orally requested that the trial court instruct the defendants to stop construction of a fence on the disputed boundary line and to remove any parts of the fence that had already been constructed. In the order, the trial court instructed the defendants to cease construction of the fence and remove any structure they had caused to be placed on the property. The trial court also continued the hearing on Sanders’s purported post-judgment motion.
“On July 19, 2012, the trial court entered an order that stated that Sanders’s motion for a new trial had been denied by operation of law[3] and that also addressed questions the parties had raised regarding the finality of the April 4 judgment, stating:
*1240 “ ‘This [c]ourt is of the opinion that all actionable issues were fully adjudicated by this Court’s order of [April 4], 2012, and that the provisions of paragraphs 2 and 3 pertaining to a survey of the properly established boundary line are administrative in nature only, and therefore, there being no just reason for delay, this Court does hereby direct the entry of final judgment in favor of the defendants and against [Sanders] in accord with the provisions of this Court’s order of [April 4], 2012.’
“Sanders filed an appeal with our supreme court on August 29, 2012; that court then transferred the cause to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
123 So.3d at 532-34 (footnotes omitted).
In Sanders, this court, ex mero motu, determined that, although the trial court’s judgment purported to be a final judgment, the judgment did not address the defendants’ counterclaim for injunctive relief. 123 So.3d at 534. Thus, because Sanders had appealed from a nonfinal judgment, we dismissed the appeal for lack of subject-matter jurisdiction. 123 So.3d at 534-35; see Sexton v. Sexton, 42 So.3d 1280, 1282 (Ala.Civ.App.2010) (“Generally, an appeal will lie only from a final judgment, and if there is not a final judgment then this court is without jurisdiction to hear the appeal.”). This court issued our opinion in Sanders on March 15, 2013.
The record in the current appeal indicates that Sanders filed a motion in the trial court on April 19, 2013, requesting a final hearing; she filed a renewed motion on July 24,- 2013. After a hearing on November 6, 2013, the trial court entered a judgment addressing the defendants’ counterclaim on March 20, 2014. On May 1, 2014, Sanders again filed a notice of appeal in our supreme court, seeking review of the trial court’s April 4, 2012, judgment establishing the boundary line; the supreme court again transferred the appeal to this court pursuant to § 12-2-7(6).[2]
In her brief on appeal, Sanders argues that the trial court erred when it determined that the defendants had proven that they had adversely possessed the disputed property up to the boundary line established in the judgment, i.e., “three feet beyond [a certain flower bed].”
“It is well settled that when a trial court enters a judgment establishing the boundary line between coterminous landowners after an ore tenus hearing, such judgment is presumed correct, and it will not be disturbed on appeal unless it is clearly erroneous or obviously unjust. Bushnell v. Martin, 553 So.2d 92 (Ala.1989). However, a trial court’s order establishing the boundary line between coterminous landowners must be supported by credible evidence. Bushnell, 553 So.2d 92.”
Moore v. Edwards, 651 So.2d 31, 33 (Ala.Civ.App.1994).
Furthermore,
*1241 “ ‘[b]oundary disputes are subject to a unique set of requirements that is a hybrid of the elements of adverse possession by prescription and statutory adverse possession.... In a boundary dispute, the coterminous landowners may alter the boundary line between their tracts of land by agreement plus possession for ten years, or by adverse possession for ten years.’
“Kerlin v. Tensaw Land & Timber Co., 390 So.2d 616, 618 (Ala.1980).”
Dungan v. Early, 142 So.3d 1135, 1139-40 (Ala.Civ.App.2013).
The record indicates that Sanders’s parents (“the Rochesters”) had purchased a parcel of property (“the Sanders property”) in or around 1960 when Sanders was a small child. The deed to the Sanders property was recorded in the Dallas County Probate Office. The Rochesters sold the Sanders property to James Duncan and Willa Dean Duncan in 1963. Sanders and her mother repurchased the Sanders property from Willa Dean Duncan in November 2001;[3] Sanders became the sole owner of the property upon her mother’s death.
The record also indicates that, in 1962, E.I. Campbell purchased a parcel of property (“the Campbell property”), which adjoins the Sanders property at its southern boundary. The record reflects that E.I. Campbell subsequently deeded to himself and his wife, Averline, a life estate in the Campbell property, and Averline’s son, Jerry Winston Lawrence, was deeded the remainder interest. The deeds to the Campbell property are recorded in the Dallas County Probate Office'.
In their answer and counterclaim, the defendants asserted ownership of the disputed property based on “over forty years” of adverse possession, and the trial court entered a judgment in favor of the defendants “on account of statutory adverse possession”; however, it is unclear to this court why the trial court chose to establish the boundary line three feet beyond the edge of the flower bed described by the parties in their testimony.
“Our Supreme Court has consistently held that ‘where a case involves a boundary dispute between coterminous landowners, title may be acquired by an adverse possession period of only 10 years.’ E.g., Moss v. Woodrow Reynolds & Son Timber Co., 592 So.2d 1029, 1030 (Ala.1992); Sashinger v. Wynn, 571 So.2d 1065, 1067 (Ala.1990); Sims v. Vandiver, 504 So.2d 250, 252 (Ala.1987). A party claiming ownership of property by adverse possession must prove by clear and convincing evidence that there was ‘actual, hostile, open, notorious, exclusive, and continuous’ possession of the property for the required period of time. Grooms v. Mitchell, 426 So.2d 820, 822 (Ala.1983). ‘[T]he burden of proof rests upon the party asserting adverse possession, and every presumption is in favor of the holder of legal title.’ Lee v. Brown, 482 So.2d 293, 295 (Ala.1985). ‘The presence of a fence, which is an outstanding symbol of possession, coupled with normal acts of use in appropriation of the land, sufficiently satisfies the requirements of adverse possession.’ Bearden v. Ellison, 560 So.2d 1042, 1045 (Ala.1990).”
Kendrick v. Kendrick, 10 So.3d 1000, 1002-03 (Ala.Civ.App.2006).
Averline asserted at times during the trial that it was her belief that the Campbell property extended up to Sanders’s house, but she also stated that she was supposed to have whatever property was described in the “real deed.” However, *1242 she testified extensively regarding a row of bushes (“the hedgerow”) that was in existence when the Campbells bought then-property in 1962. According to Averline, the hedgerow was located about halfway between her house and the Rochesters’ house. Averline testified that the Camp-bells cut the grass up to and around the hedgerow and that they did not use the property beyond the hedgerow. Clayton Campbell, Averline’s nephew, testified that when he helped build a shed on the Campbell property in the 1960s the individuals who built the shed were careful to stay four to five feet away from the hedgerow on the Campbell side.
Averline also testified that the Camp-bells and the Duncans removed the hedgerow together; her best estimation was that the hedgerow was removed sometime between 1978 and 1980, but possibly as late as the 1990s. There was other testimony indicating that the hedgerow could have been removed as early as the late 1960s or the early 1970s. However, when asked by Sanders’s attorney if the hedgerow was the “agreed-on line” between the property owned by the Campbells and the property owned by the Duncans, Averline responded that “it wasn’t.” In fact, her testimony regarding the Campbells’ and the Dun-cans’ understanding as to the boundary between their properties was that “there wasn’t [any] dispute about property or anything else because we mowed on the other side of the bushes, and he — I mean, he would help us and we helped him.” Averline gave similar testimony regarding the Rochesters: “Ms. Rochester didn’t claim up to it; we didn’t claim I mean, we all just got along.... ”
Averline testified that she believed that the location of the hedgerow corresponded with the middle of the flower bed referred to in the trial court’s judgment. Lawrence, Averline’s son, testified that the Duncans set the wooden timbers that framed the flower bed in either 1990 or 1991. Lawrence agreed that the flower bed was located where the hedgerow had previously been located; however, he also went on to testify that it was his belief that the Duncans had located the flower bed three feet beyond where the hedgerow had been located. Jerry also testified that he had mowed the grass up to the middle of the flower bed.
Sanders and the defendants each commissioned a surveyor to survey their respective properties;[4] the surveys identified the same approximate boundary line between the properties. According to Sanders’s survey, the defendants’ shed and a-camper shell encroached on her property by 3.9 feet and 5.2 feet, respectively; the defendants’ survey showed that the shed encroached on the Sanders property by 3.67 feet. It is undisputed that the shed was built in the 1960s. Sanders’s survey also shows a small rectangular fenced area (“the dog pen”) located along the western boundary of the Sanders property; the southern end of the dog pen appears to be almost parallel with the northern end of the defendants’ shed. Averline and Lawrence testified that the Duncans had previously fenced off the area identified as the dog pen to use for gardening; the record indicates that, according to the defendants, the Duncans had built the fence three feet onto the Campbell property. However, the record also indicates that the defendants did not request that the Duncans or Sanders remove the fence creating the dog pen.
*1243 The trial court’s judgment stated that the court had established the boundary line in favor of the defendants based upon adverse possession. However, “[a] court may not arbitrarily choose a boundary line between two parcels of property, Wills v. Blackwell, 386 So.2d 427 (Ala.1980), and such possession cannot be left to speculation and conjecture, Miller v. Jones, 280 Ala. 612, 196 So.2d 866 (1967).” Storey v. Patterson, 437 So.2d 491, 494 (Ala.1983). The trial court was presented with two surveys, conducted by licensed surveyors, that established the same approximate boundary line between the properties. Instead, the trial court established the boundary line three feet beyond the flower bed, which is not the boundary line reflected on the surveys.
“A coterminous landowner attempting to establish title by adverse possession must prove open, notorious, hostile, continuous, and exclusive possession of the disputed property for a period of ten years. Sims v. Vandiver, 504 So.2d 250, 252 (Ala.1987). To prove a claim of adverse possession, a plaintiff must offer evidence to show the exact boundaries of the land he is claiming. Storey v. Patterson, [437 So.2d 491 (Ala.1983) ].”
Bushnell v. Martin, 553 So.2d 92, 97 (Ala.1989) (emphasis added).
From our review of the testimony at the trial, the defendants claimed that the 1962 deed to the Campbell property established the boundary line at Sanders’s house; the surveys did not support this claim. The defendants also appeared to claim that they possessed the property up to the previous location of the hedgerow. There was contradictory evidence regarding whether the flower bed was even constructed upon the same location as the hedgerow. Additionally, Averline and Lawrence testified that, at times over the years, the defendants, Sanders, and Sanders’s predecessors in title had all used the property up to and around the location of the hedgerow and that everyone “got along” until the events leading to the initiation of this action. However, even assuming that the previous location of the hedgerow could be determined, the testimony regarding the year the hedgerow was removed was, at times, difficult to follow, rendering inconclusive any evidence intended to resolve the question whether the defendants had adversely possessed the property up to the hedgerow for the required 10 years. Even construing the evidence in a light most favorable to the defendants, and considering the deferential standard of review with which we are required to approach such issues, see Moore, supra, we find no credible evidence in the record to support the trial court’s determination that the defendants had adversely possessed the disputed property up to three feet beyond the edge of the flower bed. The only credible evidence that we have found in the record to support a finding of adverse possession by the defendants for the required 10 years was the evidence as to the existence of the shed and camper shell, which were shown as encroachments on the admitted surveys.
For the foregoing reasons, we hold that there is no credible evidence supporting the trial court’s judgment establishing the boundary line between the properties. Accordingly, we reverse the judgment and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ., concur.

. The appellees’ brief indicates that E.I. Campbell is “now deceased.” Apparently, he died during the pendency of the underlying proceedings.

 "Sanders filed the motion styled as a motion for a new trial on April 18, 2012. Pursuant to Rule 59.1, such a post-judgment motion would have been denied by operation of law on July 17, 2012, 90 days after it was filed.”

. On May 18, 2014, counsel for the defendants filed a motion for leave to file a motion in the trial court pursuant to Rule 60(b), Ala. R. Civ. P. This court granted that motion on July 9, 2014. The defendants’ Rule 60(b) motion was filed in response to the trial court’s November 6, 2013, judgment adjudicating the counterclaim and is not relevant to the issues raised in this appeal.

. The record indicates that, by the time of this transaction, James Duncan was deceased.

. The defendants’ survey was presented to the trial court by Sanders; Averline and Lawrence testified at trial that they did not agree with the results of the survey that they had commissioned.