# McLester Building Co. *v.* Upchurch.

*Bill to Determine and Settle Boundary Line.*

(Decided November 26, 1912.  60 South. 173.)

1. *Adverse Possession; Hostile Character; Extension of Possession to Boundary.*—To be adverse possession must be held under claim of right, and there can be no adverse possession without an intention to claim title; hence one occupying land up to a certain fence because he believed that to be the line of his land, but without intention to claim up to it should it be beyond the line, was without intention to claim title co-incident with his possession, and the possession to the fence is therefore not adverse; but where co-terminous

[McLester Building Co. v. Upchurch.]

owners agree upon a line as the dividing line and occupy up to it, or where one of them builds a fence as the dividing line and occupies and claims to it, with knowledge of such claim on the part of the other owner the claim is hostile and the possession adverse.

2. *Same; Evidence; Burden of Proof.*—Where one party established ownership of a lot, and that the other party's building encroached upon it, the latter party had the burden of establishing the change of line; in other words of showing title to the strip by adverse possession and definitely fixing the extent and boundaries of the land so claimed.

3. *Same; Sufficiency of Evidence.*—The evidence examined and held to show that the stable was not west of the line as formerly fixed by an iron pin and that it was not the intention of the predecessors in title to claim title beyond such line.

4. *Appeal and Error; Findings of Court; Illegal Evidence.*—While a trial court will not be reversed for admitting palpably illegal evidence where objection is not interposed, yet when a court passes on the facts, as distinguished from a jury, as much credence cannot be given to illegal as to legal evidence, although it was admitted without objection and was not excluded by the court.

APPEAL from Tuscaloosa Chancery Court.

Heard before Hon. ALFRED H. BENNERS.

Bill by A. J. Upchurch against the McLester Building Company to declare and determine a boundary line between certain lots. From a decree for complainant respondent appeals. Reversed, rendered and remanded.

OLIVER, VERNER & RICE, for appellant. The contention of appellee has been determined adversely to him in the case of *Walker v. Wyman,* 157 Ala. 478, which also determined the question of filing a claim of adverse possession under the Acts of 1892-3.—*Ashurst v. Mc-Kinney,* 92 Ala. 484; *Guice v. Barr,* 130 Ala. 570.

LONDON & FITTS, for appellee. Upchurch needed no color of title.—Section 1541, Code 1896. A declaration need not be filed under the Acts 1892-93 where there has been a continuous adverse possession of ten years prior to the act.—Section 1546, Code 1896. The evidence established a line as decreed by the chancellor.—*McQueen v. Lampley,* 74 Ala. 408; *Doe ex dem v. Adams,*

121 Ala. 669. The adverse character of complainant's possession was fully established.—*Brown v. Cockrell,* 33 Ala. 38; *Taylor v. Formby,* 116 Ala. 621; *Hess v. Rudder,* 117 Ala. 525. The holding was neither through ignorance or carelessness and did not originate in an admitted possibility of mistake.—*T. C. I. & R. R. Co. v. Lynn,* 123 Ala. 124.

ANDERSON, J.—There is no question as to the respondent's legal title to and ownership of lot 162. Nor is there much doubt as to its being 165 feet deep, or that the stable of the complainant encroaches upon same several feet. The complainant's theory is that lot 162 was not 165 feet deep and that the line of his stable is on the true line between lots 162 and 159, or, if not the true line as per the original survey and measurements, that the line now claimed by him to be the true line was previously regarded and recognized by the joint owners for years and years as the true and real boundary line between said lots. In other words, that they regarded a certain iron pin as designating the true line, and each owner claimed to said line and no further and without regard to whether it was or was not the line as fixed by the plats and surveys.

Our court has often laid down the doctrine as to what did and did not amount to adverse possession between coterminous landowners and when a line, which was not the true boundary line, but which was treated as such by the parties, actually became such and when it did not. This question has been considered in the cases of *Walker v. Wyman,* 157 Ala. 485, 47 South. 1011; *Hess v. Rudder,* 117 Ala. 525, 23 South. 136, 67 Am. St. Rep. 182; *Taylor v. Fomby,* 116 Ala. 621, 22 South. 910, 67 Am. St. Rep. 149; *Brown v. Cockrell,* 33 Ala. 38; and many other cases. "Possession to be adverse must be

held under claim of right, and there can be no adverse possession without an intention to claim title.. Hence it is essential to the proper determination of the character of the possession to consider the intention with which it was taken and held. If one occupies land up to a certain fence because he believes that to be the line of his land, but not having any intention to claim up to the fence, if it should be beyond the line, the intent to claim title does not exist coincident with the possession, and the possession up to the fence is not therefore adverse. Where, however, the coterminous owners agree upon a line as the dividing line and occupy up to it, or when one of them builds a fence as the dividing line and occupies and claims to it as such, with knowledge of such claim by the other, the claim is presumptively hostile and the possession adverse."—*Hess v. Rudder, supra.* We may concede that the coterminous owners agreed upon the line as fixed by the iron pin, as the real dividing line between lot 162 and the eastern boundary of lot 159, whether it was the true and original boundary line or not, and acquiesced therein for years and years, and to the extent of fixing it as the boundary line. Then the question arises: Where is the proper location of the line as fixed and agreed upon?

The respondent established ownership of lot 162, and that the complainant's building encroaches upon same; therefore the burden of proof is upon the complainant to establish the changed line. In other words, the burden is upon the complainant to show title to the strip, by adverse possession, and to fix with a certain degree of definiteness the extent and boundaries of the land so claimed.

We do not think that the complainant has discharged the burden of showing that his stable is west of the line as formerly fixed by the iron pin, and are also of the

opinion that it was not the intention of the complainant's predecessors to claim title beyond said line. When considering all the evidence in this case, and after making due allowances for the infirmity of recollection, especially as to locations when involving only a few inches or feet, we are of the opinion that the building in question goes beyond the line as indicated by the iron pin. In the first place, we think that the most reasonable deductions to be drawn from the evidence is that the line so often agreed upon and rcognized by the parties, and which was marked by the iron pin, was the true and original line between lots 162 and 159, and, secondly, that at the time it was so agreed upon it gave the respondent's lot a depth of 165 feet. The witness Cochran testified as to several measurements, and the expression of satisfaction on the part of the different owners as to the boundary as fixed by the iron pin. It is therefore evident that the measurements and the line so fixed gave them the requisite number of feet. The witness Cochran said that the surveys gave the owners "the number of feet claimed by them in their deed." "After that Mr. Stephen Miller, with a tapeline, made several measurements at different times but did not change the line as he owned lot 162." "I was present when this measurement was made by Judge Miller, and we found that the hotel had its full number of feet and about 18 inches over." It is manifest that while all of this was going on and up to the time that the blacksmith shop and fence were removed to be replaced by the stable, the iron pin was east of the shop, but was west of the eastern boundary line of the subsequently erected stable. The witness Cochran evidently intended that the stable should be erected on his brother's lot, and doubtless instructed the builder of the same to do so, and evidently thinks that this was done; but, after

the removal of the shop and fence and the erection of a new building, it is quite easy and natural to be mistaken as to the location, especially when the discrepancy is but a few feet, and this witness does not verify his statement by an examination of the iron pin and a comparison with it and the east line of the new building after the stable was built. Again, the Cochrans never claimed over 25 feet, yet the proof shows that the stable is 26½ feet wide where it fronts on Cotton street. There is no proof that the encroachment was on the west side, and, in the absence of such proof, we must presume that it was upon the lot which is proven to have fallen off in length. There is also proof that those in charge of and familiar with the respondent's lot 162 noticed the encroachment upon said lot shortly after the stable was erected, and brought it to the attention of Cochran, who did not recollect it on direct, but who did not deny being approached by Snow, upon his cross-examination, but who did deny some admissions testified to by Snow. There was also the positive evidence of young Snow that he and his father found the iron pin on the sidewalk, shortly after the stable was erected, and it stood several feet west of the eastern wall of the stable, and this evidence is contradicted only inferentially, except perhaps, as to the hearsay evidence of Robinson.

It is true, the respondent was permitted to testify as to statements by Robinson, which was palpably illegal evidence, though not objected to, and while a trial court would not be reversed for admitting it, yet when a court, as distinguished from a jury, passes on the facts, as much weight or credence cannot be given to illegal as legal evidence, although it got in without objection, and there was no exclusion of same by the chancellor. This evidence, however, was merely the witness' recollection

as to where he placed the building, as he was not on the spot at the time, and, aside from its being hearsay, it is also weakened by the fact that he did not accurately locate the building, as there is undisputd evidence that the rear end of the building does not conform to the line or correspond with the front. If he missed the line in the rear, he may have done so in front.

It may be conceded that Upchurch held the entire stable, as a purchaser, and did not have to file a declaration in the probate office in order to assert a claim of adverse possession to the part not embraced in his deed, and that he could tack on the adverse possession of his predecessors; but, as above demonstrated, the Cochrans had no adverse possession beyond the true line, and the possession of Upchurch, not being for 10 years, could not defeat the title of the true owner.

We are of the opinion that the line between lots 162 and 159 starts 4 feet west of the southwest corner of the stable fronting on Cotton street, and runs north to the southwest corner of lot 161, and that said lot 162 conforms in size with said lot 161, and that the east wall of complainant's stable encroaches upon respondent's lot 4 feet at the front and 2½ feet at the rear. The chancery court erred in granting the complainant relief and in not granting the respondent relief under its cross-bill, and the decree is reversed, and one is here rendered denying complainant relief and awarding the respondent title to the strip in controversy as being a part of its lot 162, and the cause will be remanded in order that the chancery court may order the enforcement of this decree.

Reversed, rendered, and remanded. All the Justices concur, except MAYFIELD and SOMERVILLE, JJ., not sitting.