4 So.2d 743

**ROUNTREE v. JACKSON et al.**

**2 Div. 171.**

Supreme Court of Alabama.

Dec. 4, 1941.

Rehearing Denied Jan. 15, 1942.

Keith & Wilkinson and Pitts & Pitts, all of Selma, for appellant.

192

Harry W. Gamble, of Selma, for appellees.

THOMAS, Justice.

The suit is styled a statutory action in the nature of an ejectment for the recovery of real estate in a city and for damages for 'the detention thereof. The plea of the defendant was that he was not guilty of the matters alleged.

There was an agreement of counsel as to the sufficiency of respective abstracts furnished on demand, Code 1940, Tit. 7, § 940, and that the same was not required to go back of the deeds from Robert T. Bryant, as executor of the last will and testament of James Mullen, deceased, one such deed being the first appearing in the abstract from said executor to John Donovan, Jr., for Lots 7 and 8 in Block 3 of the Mullen Addition, dated, towit, February 10, 1905; the other being from said executor to C. M. Howard and J. E. Wilkinson for Lot 9 of said Block 3, dated, towit, May 18, 1906.

The appeal challenged the action of the trial court in refusing to instruct the jury as requested by the defendant.

The issues of fact were submitted to the jury and the finding was in favor of the plaintiffs.

There was a motion for a new trial on defendant's behalf, which was overruled. To this ruling of the court defendant duly and legally excepted and assigns said action of the court as error.

The trial judge thus states the issue of fact to the jury, viz:

"Whoever has the legal title to this strip of land measuring four feet in width on Lauderdale Street in this City and County, * * * is entitled to a verdict at your hands.

"Both parties claim from a common source. * * * They both claim that years ago some person owned Lots 8 and 9 in what is now Block 3 in the Mullen Addition to the City of Selma (and conveyed to them respectively),—so they start out from a common source. [Parenthesis supplied.]

" * * * The plaintiffs * * * claim that they have the legal title to this 4 foot strip of land and the defendant says the legal title vests in him. That is a question you gentlemen must determine from all the evidence in this case. * * *.

"Now, according to the first map of that Addition * * * Lot 9 and Lot 8 just above it, just north of it, the dimensions were not given on Lauderdale Street; later on there was a second map of this addition in which the measurements on Lauderdale Street, of Lots 8 and 9 were given."

The learned trial judge states to the jury the law of adverse possession, as follows:

"Now the evidence here, * * * tends to show that there was a fence on Lot 9 of Block 3 of this Mullen Addition to the City of Selma; that that fence * * * ran east and west and that that fence, the evidence tends to show is located on Lot 9 of Block 3 of that addition. Now, if that fence was built and placed where the evidence tends to show it now is, and has been for a number of years, the mere possession by the owners of Lot 8, which is to the north, up to that fence, would not of itself constitute adverse possession; if there is a fence between two land owners, possession up to that fence by either of those landowners, on his side of the fence would not constitute adverse possession; it must be hostile, as against the other man, it must be adverse to him and the mere act of possession is not sufficient in order to oust the title of the men on the other side of the fence.

"The law requires the possession to be more than mere possession. In order for one to gain title to land by adverse possession the law requires that person to hold to that fence, with the intention to claim it as against all other men, the predecessors in title of these two plaintiffs.

"If Judge Rountree's predecessors in title merely worked, or used or occupied this four foot strip of land up to the fence, if that was all, they could never get adverse possession; they could never get legal title to that strip as against those who might have title by a deed.

"It must have been occupied; it must have been used by Judge Rountree and those previous to him, with the intention to hold to that fence adversely, hostilely, as against the owner or owners of Lot 9."

There are several decisions by this court that are cited as having bearing which are holdings that written instruments under which a party enters and holds possession of land, though defective as a conveyance, may operate as color of title and is admissible as evidence to show the extent of his possession. Torrey v. Forbes, 94 Ala. 135, 10 So. 320; Fletcher v. Riley, 169 Ala. 433, 53 So. 816.

In establishing adverse possession as between coterminous owners, *the controlling fact is one of intention*. There must be an intention to claim the land up to the boundary. Mere possession is not a sufficient basis for adverse possession. McLester Building Co. v. Upchurch, 180 Ala. 23, 60 So. 173; Bates v. Southern R. Co., 222 Ala. 445, 133 So. 39; Smith et al. v. Cook, 220 Ala. 338, 124 So. 898; Hess v. Rudder, 117 Ala. 525, 23 So. 136, 67 Am.St.Rep. 182; Barbaree v. Flowers, 239 Ala. 510, 196 So. 111.

In Hess v. Rudder, 117 Ala. 525, 528, 23 So. 136 supra, the rule long adhered to in this jurisdiction is stated as follows: "We have frequently had occasion to consider the question as to when the possession of a coterminous landowner becomes adverse to his neighbor, and to determine the rule applicable to the facts of particular cases. *Possession, to be adverse, must be held under a claim of right, and there can be no adverse possession without an intention to claim title.* Hence it is essential to the proper determination of the *character of the possession to consider the intention with which it was taken and held.* If one *occupies* land up to a certain fence, because he believes that to be the line of his land, but not having any intention to *claim* up to the fence, if it

194

should be beyond the line, the intent to claim title does not exist coincident with the possession, and the possession up to the fence is not, therefore, adverse. Where, however, the coterminous owners agree upon a line as the dividing line, and occupy up to it, or *when one of them builds a fence as the dividing line, and occupies and claims to it as such, with knowledge of such claim by the other*, the *claim is presumptively hostile, and* the *possession adverse. * * *.*" (Italics supplied.)

To the same effect is Branyon v. Kirk, 238 Ala. 321, 191 So. 345; Brantley v. Helton, 224 Ala. 93, 139 So. 283.

In Lyons v. Taylor et al., 231 Ala. 600, 166 So. 15, the rules governing such an action are stated. The plaintiffs must recover on the strength of their own title and not upon the weakness of the title of the adversary; Gerald et al. v. Hayes et al., 205 Ala. 105, 87 So. 351; Smith v. Bachus et al., 195 Ala. 8, 70 So. 261; that actions of ejectment, or those in the nature thereof, are determinable upon the legal, and not the equitable, title; that a conveyance by a grantor before the adoption of § 3839 of the Code of 1907, Code 1923, § 7453, Code 1940, Tit. 7, § 938, is void, unless his grantor was in the actual possession of the land sued for at the time the conveyance was made, or that at such time there was no adverse claimant in possession; and that the case of Smith v. Steiner & Lobman, 172 Ala. 79, 55 So. 606, contains the statement that color of title to a larger tract of land, with actual possession of only a part, is insufficient to entitle a plaintiff to recover in ejectment that part of the land not actually possessed.

In order for the rule that obtains before the change of the statute to apply, there must have been an adverse holder of such disputed strip of land, and the position of appellee, in our opinion, is well taken that Mrs. Berry's position was not shown to be a holder in adverse possession, or that the evidence was such as that on this point a jury question was presented. The most that can be said of appellant's evidence on adverse possession is that it was for the consideration and determination by the jury.

We are brought to the decisions in such action, dealing with the fact of a mistake made in locating the boundary, where there was never any intention of claiming the property of another, which does not negative adverse possession, or where the holding of such boundary line land was adverse to the rights of a true owner.

The subject of dividing lines, fences and muniments placed thereon was recently discussed in Brantley v. Helton, 224 Ala. 93, 139 So. 283. The holding there pertinent to this point was:

"When parties agree upon location of line fence, or one proceeds to inclose his property, and erects a fence intended as line fence, and holds actual and exclusive possession to it as such, his possession is adverse; but if location of fence is merely tentative, not intended to define permanent boundary, and possession is taken, not under claim of title to fence, but merely to true line, to be thereafter ascertained, such possession is not adverse. The controlling fact is one of intention.

"Possession is 'hostile' when one holds property as his own, whether by mistake or willfully. * * *

"In boundary line case, inclosure of valuable lands and appropriation thereof to beneficial enjoyment carries notice of adverse claim to adjoining owner, or puts him on inquiry."

The abstracts before the court indicate the date of the deed from Donovan and wife to Mrs. Berry was of December 4, 1905; and that of Bryant, as executor of the last will and testament of James Mullen, deceased, to C. M. Howard and J. E. Wilkinson was of date of May 18, 1906. The evidence further shows that the fence in question was in existence, placed or repaired when Mrs. Berry possessed the land in 1905 and used it to that fence. The testimony of Mr. Donovan is positive on this point. The evidence further shows that it was again later repaired along that line.

It is insisted that the deed from Johnson and wife to appellees described the land as "Lot 9 of Block 3, Mullen Addition," being more particularly described as indicated, and did not state that the particular lot and block named in the Mullen Addition was according to the map recorded in the Probate Office of Dallas County, Alabama, in Map Book 1, p. 63. When this conveyance is taken with appellees' abstract, it tends to show that the predecessors in title to the deed into the City of Selma dated December 13, 1936, described this lot and block in the Mullen

Addition according to a map recorded in the Probate Office in Dallas County, in Map Book 1, p. 63. The jury could infer that the City of Selma intended to convey to Johnson Lot 9, Block 3 of the Mullen Addition according to this map and that Johnson and wife intended the same when they conveyed to appellees.

Appellant's counsel in their statement of the evidence, it seems to us, omit an important fact in this connection; that is, the nature of the lands at the time the fences were erected. This is pertinent as to the intention entertained by successive grantors and grantees. Evidence in this connection was that Donovan, on February 10, 1905, bought Lots 7 and 8 of Block 3 and fenced the same with three strand barbed wire fence for a garden, the lots described in his deed, and at that time all said land was vacant. Johnson testified that he was acquainted with the property and the location of same; that Dr. Mullen's estate, including this tract of land, was sold at auction; that at such time the son-in-law Bryant, executor of the Mullen estate, had lived on the place for some years.

The evidence tends to show further that the wire fence erected by Donovan was strengthened in 1907 and again rebuilt after the year 1932, when the defendant first occupied the premises. The evidence fails to show that any of the owners of Lot 8 had the same measured or surveyed, or that the fence was placed there with the definite idea of marking the direct or true dividing lines between lots 8 and 9, or that any adjoining owner of vacant lot 9 acquiesced or joined in any recognition of the fence as the true dividing line between the two lots.

Under this evidence or reasonable tendencies thereof, it was a question for the jury as to whether or not the owners of lot 8 intended to claim the strip of land in controversy, which was a part of lot 9.

The witness Donovan, who bought the lot in 1905, stated on redirect examination: "I only claimed what was fenced up and sold what was fenced up." However, witness owned Lot 8 less than a year, stated on cross-examination, "I didn't intend to claim any other land other than what was described in my deed." The evidence shows that no part of Lot 9 was described in his deed.

The other owners of Lot 8, aside from Mrs. Berry, testified that they intended to claim only the land described in their deeds.

We have indicated that in order to establish adverse possession, the controlling fact is one of intention to claim the land to the boundary in question. Mere possession is not sufficient. The question of intention is made plain by Mr. Chief Justice Brickell in Hess v. Rudder, supra.

We are of opinion that the trial court committed no error in submitting the material issues of fact to the jury and in declining to give the defendant's requested general charge. McMillan v. Aiken, 205 Ala. 35, 88 So. 135.

Several decisions bearing upon the question presented by refusal of defendant's special charges on the rule of prescription are Hendley v. First Nat. Bank of Huntsville, 234 Ala. 535, 176 So. 348; Id., 235 Ala. 664, 180 So. 667, and Bailey v. Bond, 237 Ala. 59, 62, 185 So. 411.

In Hendley et al. v. First Nat. Bank of Huntsville, 235 Ala. 664, 180 So. 667, it is held that, "The basic principle of prescription is not the mere lapse of time, but the lapse of time within which no recognition of a subsisting and continuing right or obligation appears."

It is urged that charge 2 was improperly refused because it ignored the change in the statute, Code 1907, § 3839, as to parties seeking to convey lands when not actually in possession of the same (Gerald v. Hayes, 205 Ala. 105, 87 So. 351), and while such lands are held adversely by another. The court fully instructed the jury as to the matter sought to be given in charge 2, and there was no error in its refusal. Lyons v. Taylor, 231 Ala. 600, 166 So. 15.

Charge 3 was properly refused because it precluded the inquiry under the evidence of the later respective intentions of the parties as to their holding adversely or not to and beyond the made line or wire fence, and not to the lines and measurements as shown by the recorded map or plat in question and adverted to in the deeds indicated in the abstract.

It is insisted that charge 4 is in the language of the opinion in Bozeman v. Bozeman, 82 Ala. 389, 2 So. 732. This holding was followed in Wilkerson v. Wilkerson, 230 Ala. 567, 161 So. 820. There was no error in refusing charge 4 as its effect on the jury confusing *as to a ma-*

196

*terial fact* by which the right in question may be adjudged and amounted to a recognition or admission on the part of the defendant that binds and fails to consider the important element in the doctrine of repose or prescription. That is to say, as affecting the jury in such a case, the employing by the defendant in charge 4 of language of a decision was not only argumentative and confusing, but objectionable as submitting a question of law to the jury for decision.

It results from the foregoing that there was no error committed on the trial in refusing the general charge and the special charges requested by defendant.

Under the rule that obtains, there was no error in the court's declining the motion for a new trial. Cobb v. Malone, 92 Ala. 630, 9 So. 738; Nashville, C. & St. L. Ry. Co. v. Crosby, 194 Ala. 338, 70 So. 7.

The judgment of the circuit court should be and it is hereby affirmed.

Affirmed.

GARDNER, C. J., BROWN, and FOSTER, JJ., concur.