On Application for Rehearing

BRYAN, Judge.[1]
This court’s opinion of February 10, 2012, is withdrawn, and the following is substituted therefor.
Wanda Sue Lindsey (“Wanda Sue”) and Diedri Kay Lindsey[2] (“Diedri”) appeal from a judgment in favor of Amos Al-dridge, Syble Aldridge, Sharon Holliman, Stanley Crowell, Carl White, Mary White, and Louella Nelson (collectively referred to as “the defendants”) in a land dispute. We dismiss the appeal with respect to Diedri and affirm the judgment.
On January 16, 2008, Wanda Sue and Diedri, who are sisters, sued the defendants in Fayette Circuit Court, alleging that they jointly owned land that was coterminous with lands owned by the defendants, stating a claim seeking a determination of the location of a boundary line separating their land from the lands of the defendants, and stating a claim seeking an injunction enjoining the defendants from trespassing on land Wanda Sue and Diedri claimed to own.
Although he was not mentioned in the complaint, Jessie Curtis Lindsey (“Jessie”), a relative of Wanda Sue and Diedri, was also a joint owner of Wanda Sue and Diedri’s land when the action was filed. However, on May 7, 2009, Wanda Sue, Diedri, and Jessie executed deeds conveying to each of them sole ownership of a portion of their jointly owned land.
The parcel conveyed to Wanda Sue abuts the north boundary of all the parcels owned by the defendants and abuts the west boundary of the parcel owned by the Aldridges, Holliman, and Crowell, which we will refer to as “parcel 1.” Diedri’s parcel abuts the south boundary of parcel 1, but it does not abut either the parcel owned by the Whites, which we will refer to as “parcel 2,” or the parcel owned by Nelson, which we will refer to as “parcel 3.” Jessie’s parcel is not coterminous with any of the defendants’ parcels.
Parcel 1 is bounded on the east by the west right-of-way of County Road 100, a paved road that runs generally north and south. Parcel 2 is bounded on the west by the east right-of-way of County Road 100 and is bounded on the east by parcel 3. In addition to separating parcels 1 and 2, County Road 100 bisects the portion of Wanda Sue’s parcel that abuts the north boundaries of parcels 1, 2, and 3.
The common boundary line separating Wanda Sue’s parcel from parcels 1, 2, and 3 (i.e., the north boundaries of parcels 1, 2, and 3) is described in the deeds in Wanda Sue’s chain of title and in the deeds in the chains of title of parcels 1, 2, and 3 as the *211 quarter-quarter section line separating the northwest quarter of the northeast quarter of Section 12 in Fayette County from the southwest quarter of the northeast quarter of Section 12 (“the quarter-quarter section line”). However, Wanda Sue claims that, by virtue of the hybrid form of adverse possession applicable in boundary-line disputes, most of the common boundary line separating her parcel from parcels 1, 2, and 3 is now south of the quarter-quarter section line. The defendants all contend that the quarter-quarter section line is still the common boundary line separating Wanda Sue’s parcel from parcels 1, 2, and 3.
On May 8, 2009, the day after Wanda Sue, Diedri, and Jessie had executed deeds conveying to each of them sole ownership of a portion of their jointly owned land, the trial of the action began. The action was tried before the trial judge sitting without a jury, and the trial judge received evidence ore tenus. In addition, at the request of the parties, the trial judge viewed the land. During the trial, Wanda Sue and Diedri moved, pursuant to Rule 15(b), Ala. R. Civ. P., for leave to amend their complaint to add a claim of adverse possession by prescription, and the trial judge granted that motion.
At trial, the evidence established that Horace Greeley Nelson, a common ancestor of Wanda Sue, Diedri, Jessie, and the defendants, had owned Wanda Sue’s parcel, Diedri’s parcel, Jessie’s parcel, and parcels 1, 2, and 3. The evidence further established that, in 1951, Horace Greeley Nelson subdivided his land and conveyed it to his children. The evidence also established that, before Horace Greeley Nelson subdivided his land and conveyed it to his children, he had fenced in an area on what is now parcel 1 to use as a cow pasture (“the cow pasture”).
Wanda Sue and her witnesses testified that, after her and Diedri’s father, Rudolph Lindsey, acquired title to the parcel now owned by Wanda Sue in 1957, he made exclusive use of the cow pasture for pasturing his cows until he died in 1992. However, Holliman, one of the owners of parcel 1, testified that her grandfather had also used the cow pasture for pasturing cows until the 1960’s, and Mary White, one of the owners of parcel 2, testified that her family had also used the cow pasture for pasturing livestock until 1974. Moreover, Holliman testified that, despite Wanda Sue’s father’s use of the cow pasture, her family considered the cow pasture to be their land and that they had not told Wanda Sue’s father to remove his cows from the cow pasture “because everybody just worked together.” Holliman further testified that, upon Rudolph Lindsey’s death in 1992, his family removed his cows from the cow pasture and that his family had not made continuous use of the cow pasture thereafter. Wanda Sue contended at trial and contends before this court that, by virtue of the hybrid form of adverse possession applicable in boundary-line disputes, her father acquired ownership of the cow pasture by making exclusive use of it for 10 years. Thus, according to Wanda Sue, the southern and western fence lines of the cow pasture now constitute a portion of the common boundary line separating her parcel from parcel 1. The owners of parcel 1 contend that Rudolph Lindsey did not adversely possess the cow pasture and that the quarter-quarter section line still constitutes the entire common boundary line separating Wanda Sue’s parcel from parcel 1.
A gravel road runs southwestward across the cow pasture from County Road 100 to Diedri’s parcel, which is located south of parcel 1. Diedri began using the gravel road as a driveway approximately 4 years before trial. When the complaint *212 commencing this action was filed, she was a joint owner of the parcel now owned by Wanda Sue and, like Wanda Sue, claimed to own the cow pasture by virtue of her father’s alleged adverse possession of it. However, when she conveyed her interest in the parcel abutting the north boundary of parcel 1 to Wanda Sue on May 7, 2009, Diedri conveyed to Wanda Sue any right Diedri might have had to ownership of the cow pasture by adverse possession, and she did not plead a separate claim seeking a determination that she had a right to use the gravel road that runs across the cow pasture from County Road 100 to her parcel.
Wanda Sue contended at trial that the common boundary line separating her parcel from parcels 2 and 3 had been moved from the quarter-quarter section line to 1 of 3 alternative locations by virtue of the hybrid form of adverse possession applicable in boundary-line disputes. First, she contended that the common boundary line had been moved to a line we will refer to as “the pea-patch line.” Wanda Sue contended that the common boundary line had been moved to the pea-patch line by virtue of her family’s allegedly making exclusive use of the portions of parcel 2 and 3 located north of the pea-patch line for growing peas for more than 10 years. Although Wanda Sue introduced evidence indicating that the pea-patch line was located close to the Whites’ house, which was located near the south boundary of parcel 2, she did not introduce evidence establishing the precise location of the pea-patch line. Moreover, Mary White testified that her family had also grown peas in the portion of parcel 2 where Wanda Sue and her witnesses testified that Wanda Sue’s family had made exclusive use of the pea patches. In addition, Mary White testified that there were periods when mobile homes were located in that portion of parcel 2 and that no one grew peas in that portion of parcel 2 when the mobile homes were present.
Second, Wanda Sue contended that the common boundary line could be determined by projecting an imaginary line (“the projected imaginary line”) across parcels 2 and 3 on the same bearing as the south fence of the cow pasture, which is located on parcel 1 and is on the other side of County Road 100. However, she did not introduce any evidence indicating that the projected imaginary line coincided with any landmarks or the demarcation line of any use her family had made of parcels 2 and 3.
Third, Wanda Sue contended that her mother had fenced in an area on parcels 2 and 3 in 1993 and had made exclusive use of that area as a horse pasture (“the horse pasture”) since then and, therefore, that the south fence line of the horse pasture (“the horse-pasture line”) had become the common boundary line separating her parcel from parcels 2 and 3 by virtue of the hybrid form of adverse possession applicable in boundary-line disputes.
When Diedri conveyed her interest in the parcel abutting the north boundaries of parcels 2 and 3 to Wanda Sue on May 7, 2009, she conveyed to Wanda Sue any right Diedri might have had to ownership of any portion of parcels 2 and 3 by adverse possession.
Following the trial and his view of the land, the trial judge, on November 12, 2010, entered a judgment ruling:
“1. That the Court finds all issues in favor of the Defendants and against [Wanda Sue and Diedri].
“2. That the true boundary lines between the property of Defendants Amos Aldridge, Syble Aldridge, Sharon Faye Holliman, and Stanley Crowell, and [Wanda Sue] are those contained in the *213 property description in [those] defendants’ deed....
“3. That the true boundary lines between the property of Mary N. White and Carl D. White, and [Wanda Sue] are those contained in the property description in [the Whites’] deed....
“4. That the true boundary lines between the property of Defendant Louella Nelson, and [Wanda Sue] are those contained in the property description in [Nelson’s] deed....”
By ruling that the true boundary lines separating Wanda Sue’s parcel from parcels 1, 2, and 3 were the boundary lines contained in the legal descriptions of the defendants’ deeds, the trial judge ruled that the location of the true common boundary line separating Wanda Sue’s parcel from parcels 1, 2, and 3 was the quarter-quarter section line rather than any of the locations Wanda Sue had asserted. The trial judge did not explain the rationale for his ruling regarding Wanda Sue’s claim seeking a determination of a boundary-line dispute, although he did explain the rationale for his ruling regarding her claim of adverse possession by prescription.
Wanda Sue and Diedri timely filed a postjudgment motion, which the trial judge denied on January 12, 2011. Thereafter, Wanda Sue and Diedri timely appealed to this court. Because we lacked jurisdiction, we transferred the appeal to the supreme court, which transferred it back to us pursuant to § 12-2-7(6), Ala.Code 1975.
 Because the trial judge received evidence ore tenus, our review is governed by the following principles:
“ ‘ “ ‘[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.”” Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala.2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005), quoting in turn Philpot v. State, 843 So.2d 122, 125 (Ala.2002)). ‘“The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’ Wattman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’ Wattman v. Rowell, 913 So.2d at 1086.”
Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala.2007).
As a threshold matter, we note that, because Diedri had conveyed her interest in the parcel abutting the north boundaries of parcels 1, 2, and 3 to Wanda Sue the day before trial and had thus conveyed to Wanda Sue any ownership interest in parcels 1, 2, and 3 Diedri might have had by virtue of adverse possession before trial, Diedri was not aggrieved by the judgment entered in this action. A party that is not aggrieved by a trial court’s judgment lacks standing to appeal from that judgment, and this court lacks jurisdiction over such an appeal. See Buco Bldg. Constructors, Inc. v. Mayer Elec. Supply Co., 960 So.2d 707, 711-12 (Ala.Civ.App.2006). Accordingly, we conclude that, because Diedri was not aggrieved by the judgment in this action, we lack jurisdiction over the appeal insofar as she purports to appeal that judgment, and, therefore, we dismiss the appeal with respect to Diedri.
*214 Wanda Sue first argues that the trial judge erred by interpreting the Rule 15(b) amendment of her complaint, which added a claim of adverse possession by prescription, as superseding her claim seeking a determination of a boundary-line dispute, which she had stated in her original complaint. According to Wanda Sue, this was error because, she says, the amendment clearly indicated that it was adding the claim of adverse possession by prescription and did not indicate that that claim was intended to supersede her claim seeking a determination of a boundary-line dispute. However, the trial judge’s judgment contained express rulings determining that the true boundary lines separating Wanda Sue’s parcel from parcels 1, 2, and 3 were the boundary lines described in the defendants’ deeds. As noted above, by ruling that the true boundary lines separating Wanda Sue’s parcel from parcels 1, 2, and 3 were the boundary lines described in the defendants’ deeds, the trial judge ruled that the location of the true common boundary line separating Wanda Sue’s parcel from parcels 1, 2, and 3 was the quarter-quarter section line rather than any of the locations Wanda Sue had asserted. Those express rulings evidence the trial judge’s intent to adjudicate Wanda Sue’s claim seeking a determination of a boundary-line dispute. See Rule 58(b), Ala. R. Civ. P. (“A written order or a judgment will be sufficient if it is signed or initialed by the judge ... and indicates an intention to adjudicate, considering the whole record, and if it indicates the substance of the adjudication.”). Had the trial judge intended to rule regarding Wanda Sue’s claim of adverse possession by prescription only, his ruling “[tjhat the Court finds all issues in favor of the Defendants and against [Wanda Sue and Diedri]” would have been sufficient without his additional rulings determining the location of the boundary lines separating Wanda Sue’s parcel from parcels 1, 2, and 3. Although the trial judge’s judgment did not explain the rationale for his rulings regarding Wanda Sue’s claim seeking a determination of a boundary-line dispute, he was not required to explain the rationale for those rulings. See Rule 58(b) and Rule 52(a), Ala. R. Civ. P. (“In all actions tried upon the facts without a jury ..., the court may upon written request and shall when required by statute, find the facts specially and state separately its conclusions of law thereon.... ” (emphasis added)). Consequently, the trial judge’s express rulings determining the location of the true boundary lines separating Wanda Sue’s parcel from parcels 1, 2, and 3 refutes Wanda Sue’s argument that he treated the claim of adverse possession by prescription added by her Rule 15(b) amendment as having superseded her claim seeking a determination of a boundary-line dispute. Therefore, we find no merit in that argument.
Wanda Sue next argues that the trial judge erred because, she says, he determined that she had to prove adverse possession for 20 years in order to prevail on her claim seeking a determination of a boundary-line dispute. This was error, Wanda Sue says, because the hybrid form of adverse possession applicable in boundary-line disputes, which requires adverse possession for only 10 years, applied to her claim seeking a determination of a boundary-line dispute. In Kerlin v. Tensaw Land & Timber Co., 390 So.2d 616, 618 (Ala.1980), the supreme court stated:
“Boundary disputes are subject to a unique set of requirements that is a hybrid of the elements of adverse possession by prescription and statutory adverse possession.... In a boundary dispute, the coterminous landowners may alter the boundary line between their tracts of land by agreement plus posses *215 sion for ten years, or by adverse possession for ten years.”
As noted above, although the trial judge explained the rationale for his ruling in favor of the defendants with respect to Wanda Sue’s claim of adverse possession by prescription, he did not explain the rationale for his ruling with respect to Wanda Sue’s claim seeking a determination of a boundary-line dispute. The trial judge’s judgment indicates that the trial judge properly required proof of adverse possession for 20 years in adjudicating Wanda Sue’s claim of adverse possession by prescription; however, it does not indicate that the trial judge erroneously required proof of adverse possession for 20 years in adjudicating Wanda Sue’s claim seeking a determination of a boundary-line dispute.
“ ‘An appellate court does not presume error; the appellant has the affirmative duty of showing error. Perkins v. Perkins, 465 So.2d 414 (Ala.Civ.App.1984). Appellate review is limited to the record and cannot be altered by statements in briefs. Bechtel v. Crown Central Petroleum Corp., 451 So.2d 793 (Ala.1984). Error asserted on appeal must be affirmatively demonstrated by the record. If the record does not disclose the facts upon which the asserted error is based, the error may not be considered on appeal. Liberty Loan Corp. of Gadsden v. Williams, 406 So.2d 988 (Ala.Civ.App.1981).’ ”
Dudley v. Dudley, 85 So.3d 1043, 1048 (Ala.Civ.App.2011) (quoting Greer v. Greer, 624 So.2d 1076, 1077 (Ala.Civ.App.1993)). Accordingly, because the record does not establish that the trial judge erroneously required proof of adverse possession for 20 years in adjudicating Wanda Sue’s claim seeking a determination of a boundary-line dispute, we cannot reverse the trial judge’s judgment on the basis of that alleged error. Id.
Wanda Sue next argues that the trial judge erred in concluding that she had failed to prove the elements of the hybrid form of adverse possession applicable in boundary-line disputes with respect to the horse pasture because, she says, she proved that her family erected the fence enclosing the horse pasture in 1993 and adversely possessed the horse pasture by using it to pasture her family’s horses for the next 15 years. As noted above, the trial judge did not explain the rationale for his rulings regarding Wanda Sue’s claim seeking a determination of a boundary-line dispute, and he made no specific findings of fact regarding that claim. Because the trial judge made no specific findings of fact regarding that claim, we must assume that the trial judge made those findings that would be necessary to support his judgment with respect to that claim. See Transamerica Commercial Fin. Corp. v. AmSouth Bank, N.A., 608 So.2d 375, 378 (Ala.1992). Under the ore tenus rule, all implicit findings of fact necessary to support the trial judge’s judgment with respect to that claim carry a presumption of correctness and will not be held to be erroneous unless they are plainly and palpably wrong. Id. Moreover, “ ‘[i]n ore ten-us proceedings the trial court is the sole judge of the facts and of the credibility of witnesses,’ and ‘we are required to review the evidence in a light most favorable to the prevailing partfies].’” Architectura, Inc. v. Miller, 769 So.2d 330, 332 (Ala.Civ.App.2000) (quoting Driver v. Hice, 618 So.2d 129,131 (Ala.Civ.App.1993)).
There was some testimony that the fence enclosing the horse pasture was erected as early as 1993; however, Gary Tidwell, an employee of the Fayette County Road Department, testified that in 2001 or 2002 he had gone to Wanda Sue’s parcel *216 to bury a dead horse and that the fence enclosing the horse pasture did not exist then. Thus, based on Tidwell’s testimony, the trial judge could have found that the fence enclosing the horse pasture was not erected before 2001 or 2002 and, therefore, that Wanda Sue’s family had not used the horse pasture to pasture her family’s horses for the 10-year period required to prove the hybrid form of adverse possession applicable in boundary-line disputes. We must assume that the trial judge made that implicit finding because it supports his judgment regarding Wanda Sue’s claim seeking a determination of a boundary-line dispute, and we cannot hold that that implicit finding is erroneous because it is supported by credible evidence. See Transamerica, supra. Accordingly, we cannot reverse the trial judge’s ruling regarding Wanda Sue’s claim seeking a determination of a boundary-line dispute insofar as he ruled that the horse-pasture line was not the true boundary line separating Wanda Sue’s parcel from parcels 2 and 3.
Wanda Sue next argues that the trial judge erred in concluding that she had failed to prove the elements of the hybrid form of adverse possession applicable in boundary-line disputes with respect to the cow pasture. In Rountree v. Jackson, 242 Ala. 190, 193-94, 4 So.2d 743, 746 (1941), the supreme court stated:
“In establishing adverse possession as between coterminous owners, the controlling fact is one of intention. There must be an intention to claim the land up to the boundary. Mere possession is not a sufficient basis for adverse possession. McLester Building Co. v. Upchurch, 180 Ala. 23, 60 So. 173 [ (1912) ]; Bates v. Southern R. Co., 222 Ala. 445, 133 So. 39 [ (1931) ]; Smith et al. v. Cook, 220 Ala. 338, 124 So. 898 [ (1929) ]; Hess v. Rudder, 117 Ala. 525, 23 So. 136, 67 Am.St.Rep. 182 [ (1898) ]; Barbaree v. Flowers, 239 Ala. 510, 196 So. 111 [(1940)].
“In Hess v. Rudder, 117 Ala. 525, 528, 23 So. 136 supra, the rule long adhered to in this jurisdiction is stated as follows: We have frequently had occasion to consider the question as to when the possession of a coterminous landowner becomes adverse to his neighbor, and to determine the rule applicable to the facts of particular cases. Possession, to be adverse, must be held under a claim of right, and there can be no adverse possession without an intention to claim title. Hence it is essential to the proper determination of the character of the possession to consider the intention with which it was taken and held. If one occupies land up to a certain fence, because he believes that to be the line of his land, but not having any intention to claim up to the fence, if it should be beyond the line, the intent to claim title does not exist coincident with the possession, and the possession up to the fence is not, therefore, adverse. Where, however, the coterminous owners agree upon a line as the dividing line, and occupy up to it, or when one of them builds a fence as the dividing line, and occupies and claims to it as such, with knowledge of such claim by the other, the claim is presumptively hostile, and the possession adverse.’ ”
In the present case, the undisputed evidence established that Horace Greeley Nelson, a common ancestor of Wanda Sue, Diedri, Jessie, and the defendants, had owned Wanda Sue’s parcel, Diedri’s parcel, Jessie’s parcel, and parcels 1, 2, and 3 before 1951 and that, during the period he owned all of that land, he had erected the fence enclosing the cow pasture for the purpose of creating a cow pasture rather than for the purpose of creating a bound *217 ary fence. Wanda Sue testified that, in 1957, after Horace Greeley Nelson had subdivided his land and conveyed it to his children, her father began pasturing his cows in the cow pasture, that his use of the cow pasture was exclusive, and that he claimed ownership of the cow pasture. She further testified that her father continued to pasture his cows in the cow pasture until he died in 1992. It is undisputed that Wanda Sue’s family removed her father’s cows from the cow pasture upon his death in 1992 and that her family did not use the cow pasture continuously thereafter. Contradicting Wanda Sue’s testimony, Holliman testified that her grandfather had also pastured cows in the cow pasture until the 1960’s, and Mary White testified that her family had also pastured livestock in the cow pasture until 1974. Moreover, Holliman testified that her family considered the cow pasture to be their land while Wanda Sue’s father used it for pasturing his cows and that they had not told Wanda Sue’s father to remove his cows from the cow pasture “because everybody just worked together.” It was undisputed that Wanda Sue’s family, Holliman’s family, and Mary White’s family are all related. The trial judge could have found from the conflicting evidence that, after Horace Greeley Nelson subdivided his land and conveyed it to his children in 1951, Holliman’s family used the cow pasture for pasturing cows but also allowed Wanda Sue’s family and Mary White’s family to pasture livestock in the cow pasture. Moreover, the trial judge could have found that Wanda Sue’s father did not claim ownership of the cow pasture as evidenced by Holliman’s and Mary White’s families’ use of the cow pasture, the removal of Wanda Sue’s father’s cows from the cow pasture upon Wanda Sue’s father’s death, and the failure of Wanda Sue’s family to make continuous use of the cow pasture thereafter. Although Wanda Sue testified that her father had made exclusive use of the cow pasture from 1957 until his death in 1992 and that he had claimed ownership of the cow pasture, the trial judge, as the sole judge of the facts and the credibility of the witnesses, could properly have rejected that testimony as lacking credibility. See Architecturei, supra. Thus, the trial judge could have found that Wanda Sue’s father’s use of the cow pasture was not adverse because he did not intend to claim ownership of it when he used it. See Rountree, supra. We must assume that the trial judge made those implicit findings because they support his judgment regarding Wanda Sue’s claim seeking a determination of a boundary-line dispute, and we cannot hold that those implicit findings are erroneous because they are supported by credible evidence. See Transameriea, supra.
Wanda Sue next argues that the trial judge erred in ruling that she had failed to prove her claim of adverse possession by prescription with respect to the cow pasture because, she says, the trial judge based that ruling on his erroneous finding that the southern and western fence lines of the cow pasture did not constitute a boundary-line fence. The pertinent portion of the trial judge’s judgment states:
“On the west side of the county road (Parcel One) [Wanda Sue and Diedri] claim that the boundary is the fence or fence line as set out on Mr. Me[C]raw’s plat. [Wanda Sue and Diedri] offered testimony that the fence had been accepted as the boundary line and that [Wanda Sue and Diedri’s] predecessor in title, their father, had used the property as a pasture to the exclusion of defendants and their predecessors in title. Defendants offered testimony contradicting these claims but it was undisputed that the property had not been con *218 sistently used as a pasture since the death of [Wanda Sue and Diedri’s] father.
“The common predecessor in title of all parties is Horace Greeley Nelson who owned all of the property and divided it among his family in 1951. This is critical because the fence [Wanda Sue and Diedri] claim as the boundary line on the [east] side of Parcel One had been in existence for many years before Mr. Nelson first divided the property. The fence was not erected as a boundary but as a pasture fence and there was no intent that the fence serve as a boundary when originally erected. McCallister v. Jones, 432 So.2d 489 (Ala.1983). [Wanda Sue and Diedri] failed to prove that the pasture fence was established as a boundary line or that it became a boundary line after division of the property.”
(Emphasis added.)
Wanda Sue argues that the trial judge erred in finding that the southern and western fence lines of the cow pasture had not become a boundary-line fence after Horace Greeley Nelson subdivided his land and conveyed it to his children in 1951 because, she says, she introduced substantial evidence tending to prove that the southern and western fence lines of the cow pasture had indeed become a boundary-line fence after Horace Greeley Nelson subdivided his land and conveyed it to his children in 1951. However, the trial judge, as the sole judge of the facts and the credibility of the witnesses, could have found that the testimony tending to prove that the southern and western fence lines of the cow pasture had become a boundary-line fence after Horace Greeley Nelson subdivided his land and conveyed it to his children was not credible. See Architecture supra. Moreover, as discussed above, based on the evidence before him, the trial judge could have found that, although Wanda Sue’s father used the cow pasture, he did not claim ownership of it and, therefore, did not adversely possess it. See Rountree, supra. That same evidence would support a finding that Wanda Sue’s father did not consider the southern and western fence lines of the cow pasture to be a boundary-line fence. Accordingly, the trial judge’s finding that the southern and western fence lines had not become a boundary-line fence after Horace Greeley Nelson subdivided his land and conveyed it to his children is supported by credible evidence and, therefore, we cannot hold that that finding is erroneous. See Retail Developers of Alabama, 985 So.2d at 929 (“ ‘ “ ‘[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.’ ” ’ ” (quoting Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala.2007), quoting in turn Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005), quoting in turn Philpot v. State, 843 So.2d 122, 125 (Ala.2002))).
Wanda Sue next argues that the trial judge erred in concluding that she had failed to prove the elements of adverse possession by prescription with respect to the horse pasture because, she says, she introduced substantial evidence tending to prove that she had adversely possessed the portions of parcels 2 and 3 located north of the horse-pasture line by proving that her father had planted peas there for more than 20 years before the fence enclosing the horse pasture was erected. However, the evidence was in conflict regarding whether Wanda Sue’s family had made exclusive use of that area for growing peas before the fence enclosing the horse pasture was erected. Wanda Sue and her witnesses testified that Wanda *219 Sue’s family had indeed made exclusive use of that area for growing peas. However, Mary White testified that her family had also used that area for growing peas and, thus, that Wanda Sue’s family’s use of that area was not exclusive, which is an essential element of a claim of adverse possession by prescription. See Kerlin, 390 So.2d at 618 (“Adverse possession by prescription requires actual, exclusive, open, notorious and hostile possession under a claim of right for a period of twenty years.” (emphasis added)). The trial judge, as the sole judge of the facts and the credibility of the witnesses, could have found that Mary White’s testimony regarding that issue was credible and that the conflicting testimony of Wanda Sue and her witnesses regarding that issue was not credible. See Architecture, supra. Based on that credibility determination, the trial judge could have found that Wanda Sue had failed to prove that her father had adversely possessed the portions of parcels 2 and 8 north of the horse-pasture line by planting peas there for more than 20 years before the fence enclosing the horse pasture was erected. Therefore, we find no merit in Wanda Sue’s argument that the trial judge erred in concluding that she had not proved the elements of adverse possession by prescription with respect to the horse pasture.
Wanda Sue next argues that the trial judge erred in concluding that she had failed to prove the elements of adverse possession by prescription with respect to the cow pasture. However, as explained above, there was credible evidence that would support a finding that, although Wanda Sue’s father used the cow pasture, he did not claim to own the cow pasture and, therefore, that he did not adversely possess it. See Rountree, supra. Therefore, we find no merit in Wanda Sue’s argument that the trial court erred in concluding that she had failed to prove the elements of adverse possession by prescription with respect to the cow pasture.
Finally, Wanda Sue argues that the trial judge erred in viewing the land without the parties’ counsel being present. However, the only legal authority Wanda Sue cites in support of that argument is the first sentence of Rule 43(a), Ala. R. Civ. P., which provides that “[i]n all trials the testimony of witnesses shall be taken' orally in open court, unless otherwise provided in these rules.” The trial judge was not taking the testimony of witnesses when he viewed the land. Therefore, the first sentence of Rule 43(a) does not support Wanda Sue’s argument. Rule 28(a)(10), Ala. R.App. P., requires that an appellant’s argument be supported with citations to cases, statutes, or other legal authority. “ ‘[A]n appellant’s citations to general propositions of law not specifically applicable to the issues presented by the appeal do not meet the requirements of Rule 28, Ala. R.App. P.’” Cincinnati Ins. Cos. v. Barber Insulation, Inc., 946 So.2d 441, 449 (Ala.2006) (quoting BankAmerica Hous. Servs. v. Lee, 833 So.2d 609, 621 (Ala.2002)). Consequently, we decline to consider Wanda Sue’s final argument.
For the reasons discussed above, we dismiss the appeal with respect to Diedri and affirm the judgment.
APPLICATION FOR REHEARING GRANTED; OPINION OF FEBRUARY 10, 2012, WITHDRAWN; OPINION SUBSTITUTED; APPEAL DISMISSED AS TO DIEDRI KAY LINDSEY; AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. Before this appeal was assigned to this judge, the court reporter requested and received extensions of the deadline for completion of the transcript totaling 147 days, and the parties requested and received extensions of the deadlines for filing their briefs totaling 21 days. As a result of those extensions, this appeal was not assigned to this judge until more than 290 days after the filing of the notice of appeal.

. Diedri Kay Lindsey changed her last name from Roberts to Lindsey while this action was pending in the trial court.